**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No.: 2:13-cv-00536-RTR |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE subscriber assigned IP | ) | |
| address 184.58.186.212, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No.: 2:13-cv-00544-RTR |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE subscriber assigned IP | ) | |
| address 97.83.171.176, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No.: 2:13-cv-00779-RTR |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE subscriber assigned IP | ) | |
| address 174.103.170.157, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>PLAINTIFF'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE</u>**

1

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................7

II.   FACTS ..............................................................................................................8

   A.  BitTorrent Copyright Infringement Damages Malibu Media ...........................8

   B.  Malibu Media's Anti-Piracy and First Generation Litigation Efforts ..............9

   C.  Defense Lawyers Employ a One-Size-Fits-All Tactic ...................................11

   D.  Most Common Defenses ..............................................................................12

   E.  Plaintiff Developed the Cross Reference Tool to Overcome the Common Defenses .......12

   F.  Malibu Media Now Only Sues Defendants Individually ................................13

   G.  Malibu Media Has a Proper Purpose For Attaching Exhibit C .......................14

      *1. Exhibit C is Intended to Assist Malibu Media in Identifying the Infringer* .............14

        *(a) Demonstrative Hypothetical* ...................................................................15

           (I)    Third Party Subpoenas ............................................................15

           (II)   Forensic Computer Examinations............................................15

      *2. Exhibit C is Intended to Be Used by Innocent Subscribers in Conjunction With the Exculpatory Evidence Request Form* ........................................................16

      *3. Exhibit C Is Intended to Prove that the Defendant is a BitTorrent User*...................17

      *4. Exhibit C is Intended to Prove the Infringer Resides in the Subscriber's House* .......17

      *5. Exhibit C is Intended to Prove the Defendant Had Knowledge of the Infringement*...18

      *6. Exhibit C is Intended to Support Malibu Media's Argument that Its Claims are Plausible*..........................................................................................19

      *7. Exhibit C is Intended to Frame the Boundaries of Discovery*...................................19

      *8. Some Courts in the Seventh Circuit Prohibit Plaintiff from Speaking With Defendant Before Serving Defendant with the Complaint* ........................................20

   H.  Malibu Media's Counsel Habitually Use Exhibit C For Its Intended Purpose ................20

   I.  The Exhibit C Identified by This Court as Potentially Objectionable Contains Relevant Information.........................................................................................21

      *1. Exhibit C May Be Used to Identify Defendant* .......................................21

      *2. Exhibit C May Be Used to Impeach Defendant*.......................................22

      *3. Knowledge and Absence of Mistake* ......................................................22

   J.  During the Process of Selecting Defendants, Counsel Does Not Consider Whether A Specific Downloaded File Will Embarrass a Defendant ................................22

Case 2:13-cv-00544-RTR   Filed 10/04/13   Page 2 of 48   Document 19

K. Exhibit C Has Received Extensive Judicial Scrutiny and Has Been Found to be Proper .23

L. The RIAA Attached a Very Similar Exhibit For Reasons That Cannot Possibly Be Attacked On The Basis that the Purpose Was to Embarrass a Defendant ........................24

M. Malibu Media Intentionally Allows Defendants to Proceed Anonymously ....................24

N. Courts throughout the Country have Expressly Found that Malibu Media's Counsel do not Engage in Improper Litigation Tactics .......................................................25

O. Malibu Media's Current Policy is Not to Contact Doe Defendants Regarding Settlements ...................................................................................................................26

III.   LEGAL STANDARD FOR FED. R. CIV. P. 11(B)(1) ...................................................27

IV.   ARGUMENT .............................................................................................................29

A. This Court Should Not Follow Judge Conley's Opinion and Order ...............................29

   1.   An Objectively Reasonable Attorney May Conclude That Attaching Exhibit C at the Pleading Stage of Litigation Serves a Legitimate Purpose .............................29

   2.   Plaintiff Should Not be Held to a Higher Standard Than Other Federal Court Litigants ...............................................................................................................34

B. This Court Should Not Sanction Undersigned Because of the Corrective Efforts Made to Withdraw Exhibit C ..................................................................................................36

C. Sanctions Are Inappropriate Because Plaintiff Files Exhibit C With a Proper Purpose ...37

D. Fed. R. Civ. P. 10(c) Expressly Authorizes Plaintiff to Attach Exhibits .........................38

E. Sanctioning Plaintiff Would Impede Its Ability to Comply with Rule 11(b)(2) .............38

F. The Evidence Set Forth on Exhibit C May Be Admissible Under Fed. R. Evid. 404(b) ..40

G. This Court May Not Sanction Plaintiff Based On Pure Speculation, Particularly When that Speculation Has Been Directly Contradicted By Affidavits and Other Competent Evidence ....................................................................................................................44

H. Sanctioning Plaintiff Would Chill Legitimate Advocacy ...............................................45

I. Previous Judicial Approval of Exhibit C Weighs Heavily Against a Finding that Plaintiff Filed It for An Improper Purpose ...............................................................................46

J. The Court Has the Option to Sua Sponte Strike Offensive Cross Reference Hits Under Fed. R. Civ. P. 12(f) ..................................................................................................47

V.   CONCLUSION .........................................................................................................48

Case 2:13-cv-00544-RTR   Filed 10/04/13   Page 3 of 48   Document 19

*Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.*, 475 F. Supp. 2d 213, 235 (E.D.N.Y. 2007)................................................................................................................................46

*Andrews v. Elec. Motor Sys., Inc.*, 767 F. Supp. 853, 856 (S.D. Ohio 1991)..............................46

*Boese v. Milwaukee Cnty.*, 801 F. Supp. 220, 227 (E.D. Wis. 1992) ...........................................44

*Brown v. Federation of State of Medical Boards of U.S.*, 830 F.2d 1429 (7th Cir. 1987)............28

*Brown v. Michigan*, 2006 WL 1374042, *1 (E.D. Mich. 2006)....................................................44

*Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2461 (1990)................44

*CSX Transp., Inc. v. Total Grain Mktg., LLC*, 2012 WL 4827626 (S.D. Ill. Aug. 3, 2012)........37

*DeBartolo v. Health & Welfare Dep't of the Const. & Gen. Laborers' Dist. Council of Chicago & Vicinity*,  2011 WL 1131110, *12 (N.D. Ill. 2011) ............................................................44

*DeBartolo v. Health and Welfare Dept. of Const. and General Laborers' Dist.*, 2011 WL 1131110, *12 (N.D. Ill. 2011)..................................................................................................28

*Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001) .................................................40, 41

*FDIC v. Tekfen Construction and Installation Co., Inc.*, 847 F.2d 440, 444 (7th Cir. 1988)........27

*Fleming Sales Co., Inc. v. Bailey*, 611 F. Supp. 507, 519 (N.D. Ill. 1985)..................................45

*Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 495 (7th Cir. 1998) ......................................41

*Harlyn Sales Corp. Profit Plan v. Kemper Financial Services, Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993).................................................................................................................................27

*Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Serv's, Inc.* 9 F.3d 1263, 1270 (7th Cir.1993)............................................................................................................................30

*Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993).................................................................................................................................45

*Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003)..................................................45

*Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) ......................................29

*In re Pennie & Edmonds LLP*, 323 F.3d 86, 89-90 (2d Cir. 2003) .............................................29

*Ingenuity 13, LLC v. John Doe*, 12-cv-8333-ODW, CM/ECF 48...............................................38

*Ingenuity 13, LLC v. John Doe*, 12-cv-8333-ODW, CM/ECF 48 at *6-7 ..................................39

*Interscope Records v. Duty*, 2006 WL 988086, at *1-2 (D. Ariz. Apr. 14, 2006).......................24

*Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003)...................................29

*Malibu Media LLC v. John Doe subscriber assigned IP address 24.183.51.58*, 2013 WL 4821911 (W.D. Wis. Sept. 10, 2013) ......................................................................................29

*Malibu Media LLC v. John Doe subscriber assigned IP address 24.183.51.58*, 2013 WL 4821911, at *4  (W.D. Wis. Sept. 10, 2013).......................................................................30, 31

*Malibu Media LLC v. John Doe subscriber assigned IP address 24.183.51.58*, 2013 WL 4821911, at *5 (W.D. Wis. Sept. 10, 2013)........................................................................34

*Malibu Media LLC v. John Does 1-28*, 12-CV-12598, 2012 WL 7748917 (E.D. Mich. Oct. 31, 2012)...........................................................................................................................25

*Malibu Media, LLC v. Doe*, 13-21579-CIV, 2013 WL 2950593 (S.D. Fla. June 14, 2013).........25

4

*Malibu Media, LLC v. Does 1-59*, 1CV12-0888 AWI DLB, 2012 WL 4465359 (E.D. Cal. Sept. 25, 2012) ...........................................................................................................25

*Malibu Media, LLC v. John Doe 1*, CIV.A. 12-2078, 2013 WL 30648 (E.D. Pa. Jan. 3, 2013) .23, 33, 46

*Malibu Media, LLC v. John Doe*, 1:13-cv-00675-TWP-MJD, CM/ECF 27, p. 4 (S.D. Ind. Sept. 13, 2013) ...........................................................................................................35

*Malibu Media, LLC v. John Doe*, 2:13-cv-00055-JVB-JEM, CM/ECF 22, at p 8 (N.D. Ind. Aug. 16, 2013) .....................................................................................................33, 46

*Malibu Media, LLC v. John Does 1, 6, 13, 14*, 2013 WL 3038025, *8 (E.D. Pa. June 18, 2013) .9, 11

*Malibu Media, LLC v. John Does 1, 6, 13, 14*, CIV.A. 12-2078, 2013 WL 3038025 (E.D. Pa. June 18, 2013) ........................................................................................................25

*Malibu Media, LLC v. John Does 1-11*, 12-cv-01117-WTL-MJD (S.D. In. Sept. 19, 2013) .......20

*Malibu Media, LLC v. John Does 1-16*, 902 F. Supp. 2d 690, 701 (E.D. Pa. 2012) ...................24

*Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, No. 12-CV-02598-REB-MEH, 2013 WL 1777710 (D. Colo. Feb. 12, 2013)..................................................................25

*Malibu Media, LLC v. John Does 1-21*, 12 C 9656, 2013 WL 2458290 (N.D. Ill. June 6, 2013) 25

*Malibu Media, LLC v. John Does 1-23*, 5:12-CV-04442, 2013 WL 1389763 (E.D. Pa. Apr. 3, 2013) ...........................................................................................................25

*Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH [CM/ECF 61] at p. 15 (E.D. Mich. May 16, 2013) ......................................................................................26

*Malibu Media, LLC v. John Does 1-48*, 2:12-CV-426-FTM-29, 2012 WL 6867308 (M.D. Fla. Nov. 15, 2012).........................................................................................25

*Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291, at *4 (S.D.N.Y. 2012)...................26

*Malibu Media, LLC v. John Does 1-6*, 12 C 08903, 2013 WL 2150679 (N.D. Ill. May 17, 2013) ...........................................................................................................25, 26

*Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012).........................................................................................26

*Malibu Media, LLC v. Reynolds*, 12 C 6672, 2013 WL 870618 (N.D. Ill. Mar. 7, 2013)............25

*Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7 (N.D. Ill. Mar. 7, 2013) ....................26

*Mathias v. Accor Econ. Lodging, Inc.,* 01 C 6329, 2002 WL 1611582 (N.D. Ill. July 22, 2002)42, 43

*Mathis v. Phillips Chevrolet, Inc.,* 269 F.3d 771, 775-76 (7th Cir. 2001) ...................................41

*Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.*, 8 F.3d 441, 448 (7th Cir. 1993) ........46

*Patrick Collins, Inc. v. John Does 1-54*, 2012 WL 911432, at *4 (D. Ariz. 2012) .....................35

*Patrick Collins, Inc. v. John Does 1-9,* 12-CV-3161, 2012 WL 4321718 (C.D. Ill. Sept. 18, 2012) ...........................................................................................................10

*People v. Corbett*, 611 P.2d 965, 966 (Colo. 1980)...................................................................41

*Perez v. Posse Comitatus*, 373 F.3d 321, 326 (2d Cir. 2004)......................................................36

*Reed v. Great Lakes Companies, Inc.,* 330 F.3d 931 (7th Cir. 2003)..........................................28

5

*Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 937 (7th Cir. 2003) ...................................44

*Reinhardt v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 636 F.
   Supp. 864, 868 (E.D. Mich. 1986) ...................................................................................46

*Robinson-Reeder v. Am. Council on Educ.*, 626 F. Supp. 2d 11, 18 (D.D.C. 2009) ...................44

*Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) ......................................38

*Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1185 (9th Cir. 1988)............44

*State v. Hayward*, 327 Or. 397, 407, 963 P.2d 667, 674 (1998)..................................................41

*State v. Taylor*, 2001-1638 (La. 1/14/03), 838 So. 2d 729, 746 ..................................................41

*Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987) .....................28

*Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992) ..............................47

*Tallman v. Freedman Anselmo Lindberg, LLC*, 2012 WL 589020 (C.D. Ill. Feb. 22, 2012).......36

*United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115-16 (9th Cir. 2001)...................29

*United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012) .........................................................40

*United States v. DeLuna*, 763 F.2d 897, 916 (8th Cir. 1985).......................................................42

*United States v. Juarez*, 561 F.2d 65, 74 (7th Cir. 1977)............................................................42

*United States v. Medtronic, Inc.*, 2000 WL 1478476 (D. Kan. July 13, 2000) ............................19

*United States v. Phillips*, 664 F.2d 971, 1029 (5th Cir. 1981) ....................................................42

*Vandeventer v. Wabash National Corp.*, 893 F.Supp. 827, 840 (N.D. Ind. 1995) ......................28

*Vollmer v. Selden*, 350 F.3d 656, 662-63 (7th Cir. 2003) ...........................................................44

*Wesely v. Churchill Dev. Corp.*, 99 F.3d 1141 (6th Cir. 1996) ...................................................36

*Windy City Innovations, LLC, v. Am. Online, Inc.*, 227 F.R.D. 278, 282 (N.D. Ill. 2005) ..........39

Case 2:13-cv-00544-RTR   Filed 10/04/13   Page 6 of 48   Document 19

## I.    INTRODUCTION

Plaintiff, Malibu Media, LLC's ("Malibu Media") decision to attach Exhibit C to the complaint was made with innocent intent and was objectively reasonable.  As explained herein, Plaintiff has a proper purpose for attaching Exhibit C to the complaint and never considered misusing the exhibit.   Plaintiff respectfully disagrees with the Honorable Judge Conley's Opinion and Order from the Western District of Wisconsin, stating that no objectively reasonable attorney could file Exhibit C with the complaint for a legitimate purpose.  Plaintiff's position is supported by no less than three different federal court judges that have found that Exhibit C has legitimate purposes and may be properly filed with Plaintiff's Complaint.  Further, Plaintiff has already taken preemptive remedial measures to negate any potential for unintended harm.  And, Judge Conley's Opinion and Order has served as a sufficient deterrent to Plaintiff.  Accordingly, no sanctions are warranted.

As explained more fully below, Exhibit C is intended to: (a) assist Plaintiff to identify the infringer; (b) allow an innocent doe defendant to identify the infringer and tell Plaintiff the identity of the infringer prior to being served; (c) assist Plaintiff to prove that the Defendant is a BitTorrent user; (d) assist Plaintiff to prove that the infringer resides in the subscriber's house; (e) assist Plaintiff to prove that the defendant had knowledge of the infringement; and (f) assist Plaintiff to defend against motions to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6).  As set forth below, *none* of the evidence supports a finding that Malibu Media had an improper purpose for attaching Exhibit C.  Conversely, *all* of the evidence supports a finding that Malibu Media and undersigned attached Exhibit C with a proper purpose.   Accordingly, Plaintiff respectfully requests that the Court discharge the Show Cause Order without taking further action.

Case 2:13-cv-00544-RTR   Filed 10/04/13   Page 7 of 48   Document 19

## II.    FACTS

### A.    BitTorrent Copyright Infringement Damages Malibu Media

Malibu Media was founded by Brigham and Colette Field (husband and wife). *Declaration of Colette Field* at ¶ 3.  It produces what GQ Magazine describes as "perhaps the world's most sophisticated cinema erotica."[1] Malibu Media's owners recognized that there was an unfulfilled niche in the adult entertainment industry; viz., sophisticated erotica which is appealing to men, women and couples.  *Id.* at ¶ 4.  Its owners worked long hours and invested substantially all of their disposable income into their business for *years* before it finally became profitable.  *Id.* at ¶ 5.  Malibu Media makes money by distributing its product through a subscription based website, www.x-art.com.  *Id.* at ¶ 6.   It currently has approximately 50,000 subscribers.  *Id.* at ¶ 7.  Malibu Media spends over two million dollars a year producing content. *Id.* at ¶ 8.  And, millions more each year in ancillary costs associated with running its business. *Id.*  Since Malibu Media has real costs, it cannot compete against free copies of its works.  *Id.* at ¶ 9.

On June 10, 2013, Malibu Media became the first plaintiff to ever try a BitTorrent copyright infringement case.  *Id.* at ¶ 10.  The "Bellwether" trial was presided over by the Honorable Michael M. Baylson, United States District Court Judge for the Eastern District of Pennsylvania.  *Id.* at ¶ 11.   Judge Baylson made an audio recording of the trial which is attached as Exhibit A.  All of the testimony contained in Exhibit A is hereby incorporated into this response.   The Bellwether case ended with final judgments on liability in favor of Plaintiff against all three defendants who were tried.  *Id.* at ¶ 12.  And, a final judgment on damages was

---

[1]*See*  http://www.gq-magazine.co.uk/girls/articles/2013-03/13/brigham-colette-field-x-art-sex-scene

Case 2:13-cv-00544-RTR   Filed 10/04/13   Page 8 of 48   Document 19

entered in an amount of $112,500 plus attorneys' fees and costs against defendant Bryan White. *Id.*

"The evidence that Malibu presented at trial was persuasive as to the fact that it had suffered real damages as a result of illegal downloading of its movies through BitTorrent."[2] *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 2013 WL 3038025, *8 (E.D. Pa. June 18, 2013). Indeed, approximately 80,000 people in the United States use BitTorrent to steal Malibu Media's movies each month. *Declaration of Colette Field* at ¶ 13. Based on the number of infringements being committed each month, Malibu Media knows more people are watching its movies in 2013 than were watching its movies in previous years. *Id.* at ¶ 14. Nevertheless, Malibu Media's subscriber base has not grown because of the theft. *Id.*

### B. Malibu Media's Anti-Piracy and First Generation Litigation Efforts

In early 2012, after watching its movies be stolen by unknown thousands each month, Malibu Media engaged Lipscomb, Eisenberg and Baker, PL ("LEB"), an AV Rated law firm in Miami, Florida, to coordinate the filing of lawsuits across the country. *Id.* at ¶ 15. Malibu Media has two goals: (a) deter infringement and (b) obtain compensation for the theft of its movies. *Id.* at ¶ 16. Regarding deterrence, in addition to the lawsuits, Malibu Media sends thousands of notices each month under the Digital Millennium Copyright Act ("DMCA Notices") to websites and search engines. *Id.* at ¶ 17. These notices are intended to cause the

---

[2] On two separate occasions this year, third parties have hacked into Malibu Media's servers, converted its movies into .torrent files and distributed those movies via BitTorrent prior to the date those movies were released onto its website. Malibu Media spends approximately $15,000 a month on increased security features to prevent this from continuing to happen. Nearly every week, Malibu Media's subscribers make comments such as "why should we pay for your website when we can get it for free on BitTorrent?" Malibu Media's subscribers also complain that they can download its movies faster through BitTorrent than from its website. Accordingly, Malibu Media has taken measures to increase its download speed which cost it approximately $20,000 each month.

websites and search engines to remove Malibu Media's content (or the link to it) from their websites.[3]  *Id.*

In early 2012, Malibu Media began filing comparatively small (usually 10-50 Doe Defendants) "same swarm joined" lawsuits with proper personal jurisdiction in courts across the country.  *Id.* at ¶ 18.  The form of the pleadings and motions in these suits were initially drafted by LEB's attorneys.  *Id.*  Malibu Media also retained other counsel across the country, including undersigned, whose job it is to serve as lead counsel in those jurisdictions where they were admitted and practice.[4]  *Id.* at ¶ 19.  The majority of judges at that time were holding that same swarm joined cases were not only permitted under Fed. R. Civ. P. 20, but were also proper under Fed. R. Civ. P. 1 and 20.  *Declaration of Mary Schulz* at ¶ 3.

During the first six months of 2012, Malibu Media sued over two thousand John Doe Defendants through same swarm joined lawsuits.  *Declaration of Colette Field* at ¶ 20.  During that same six month period, hundreds of thousands of people stole Malibu Media's movies.  *Id.*  While suing a couple of thousand people may seem like an extreme measure, as one court opined "[t]he proliferation of these types of lawsuits would be expected given the alleged infringement by thousands of people. The volume of lawsuits alone does not indicate any impropriety." *Patrick Collins, Inc. v. John Does 1-9,* 12-CV-3161, 2012 WL 4321718 (C.D. Ill. Sept. 18, 2012).  In the aggregate, every year, BitTorrent infringement causes millions of dollars of damage to Malibu Media.  *Id.* at ¶ 21.  With this as the background, the decision to act made

---

[3] **[REDACTED]**

[4] While LEB monitors, coordinates, advises and assists undersigned and Malibu Media's other lead counsel, it is not lead counsel in any case where it does not make an appearance.  Indeed, undersigned is solely responsible for what occurs in the cases filed by undersigned.  Further, undersigned, like all of Malibu Media's lead counsel, have a direct line of communication to Malibu Media's owners, and LEB does not have the power to direct undersigned to take any action.  Instead, Malibu Media retains all such power.

10

sense to Malibu Media. *Id.* As the former Register of Copyrights testified, these suits are necessary to deter infringers:

> While we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored. For many people, the best form of education about copyright in the internet world is the threat of litigation. In short, if you break the law, you should be prepared to accept the consequences. Copyright owners have every right to enforce their rights in court, whether they are taking action against providers of peer-to-peer services designed to profit from copyright infringement or against the persons engaging in individual acts of infringement using such services.[5]

Significantly, Judge Baylson held, "I emphasize that Malibu is not what has been referred to in the media and legal publications, and in the internet blogosphere, as a "copyright troll" – i.e., a non-producer who merely has acquired the right to bring lawsuits against alleged infringers. Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works." *Malibu Media, LLC v. John Does 1, 6, 13, 14,* 2013 WL 3038025, *1 (E.D. Pa. June 18, 2013). Further, Judge Baylson opined "many internet blogs commenting on this and related cases ignore the rights of copyright owners to sue for infringement, and inappropriately belittle efforts of copyright owners to seek injunctions and damages." *Id.* at n.1.

**C.   Defense Lawyers Employ a One-Size-Fits-All Tactic**

In response to Malibu Media's and third parties' BitTorrent copyright infringement lawsuits, a group of approximately twenty attorneys (the "Regulars") began focusing on defending these cases. *Declaration of M. Keith Lipscomb*, at ¶ 3. All of the Regulars, as well as many of the other defense lawyers and *pro se* litigants communicate with each other through

---

[5] Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary 108th Cong. (2003) available at http://www.copyright.gov/docs/regstat090903.html

Case 2:13-cv-00544-RTR   Filed 10/04/13   Page 11 of 48   Document 19

online blogs. *Id.* at ¶ 4. These blogs are administered by bitter former defendants sued by third party plaintiffs for BitTorrent copyright infringement. *Id.* at ¶ 5. The bloggers read and analyze virtually every paper filed in a suit brought by Malibu Media. *Id.* Plaintiff's counsel was told by one of the Regulars that they have a private Listserve so that they may discuss legal strategies and exchange template pleadings and motions. *Id.* at ¶ 6.

### D. <u>Most Common Defenses</u>

The Regulars, defense counsel generally, and *pro se* litigants routinely assert disingenuous and often perjurious defenses. *Id.* at ¶ 7. The five most common defenses are: (1) the infringement was not committed by either me or anyone else in my house; (2) the infringement was not committed by me but instead by someone else in my house; (3) a third party used my unsecure Wi-Fi router; (4) my password protected Wi-Fi router was hacked by an unknown third party; and, (5) the complaint does not state a plausible cause of action because an IP Address is not a person. *Id.* at ¶ 8.

### E. <u>Plaintiff Developed the Cross Reference Tool to Overcome the Common Defenses</u>

In June 2012, in order to overcome the most common defenses, Plaintiff's counsel began working with IPP International, who performs the pre-suit investigation for Malibu Media, on developing better evidence against the infringers. *Id.* at ¶ 9. Specifically, Plaintiff's counsel asked IPP International to expand the universe of .torrent files it scans so that Malibu Media could disprove *or* corroborate a defendant's defense. *Id.* at ¶ 10. Additionally, Plaintiff's counsel wanted expanded surveillance of the BitTorrent activity associated with an IP Address so that it could better argue that its cases are plausible under Fed. R. Civ. P. 12(b)(6). *Id.* Beginning on July 16, 2012, IPP International greatly expanded the number of .torrent files it

12

was scanning. *Id.* at ¶ 11. Currently, IPP International is scanning approximately ten million (10,000,000) .torrent files each day. *Id. See also* Exhibit A, testimony of Michael Patzer.

Plaintiff and its counsel refer to the evidence of third party infringements as the "Cross Reference Tool." *Id.* at ¶ 12. Since developing the Cross Reference Tool, the first thing Plaintiff's counsel do after a Defendant raises one of the most common defenses is go to the Cross Reference Tool and then perform additional research about the defendant. *Id.* at ¶ 13.

Specifically, Plaintiff's counsel are trained to review the defendant's social media webpages, e.g., Facebook, LinkedIn and Twitter. *Id.* at ¶ 14. Counsel also reviews any other online biographies which can be found, such as those listed on an employer's or social group's webpage. *Id.* at ¶ 15. Additionally, counsel are trained to look at Google Earth to ascertain where the defendant lives, the type of dwelling, and the defendant's proximity to third parties. *Id.* By comparing all of the publicly available information about a defendant with what is contained on the Cross Reference Tool, counsel for Malibu Media are often able to confirm that the defendant is the actual infringer. *Id.* at ¶ 16. Alternatively, counsel learns that the infringer is some other identifiable person in the subscriber's home. *Id.* at ¶ 17. In short, the Cross Reference Tool is habitually used as a first resource. *Id.* at ¶ 18.

F.    **Malibu Media Now Only Sues Defendants Individually**

Malibu Media and its counsel are constantly striving to improve the strength of the cases that they file. *Id.* at ¶ 25. With that in mind, at the beginning of 2013, Malibu Media ceased suing people in joined suits and began to only sue defendants individually. *Id.* at ¶ 26. By so doing, Malibu Media was able to focus exclusively on people whom it describes as "persistent on-line infringers." *Id.* The form of the individual defendant complaint was created by M. Keith Lipscomb of LEB. *Id.* at ¶ 27. Exhibit C to a complaint includes everything that is in the Cross

13

Reference Tool at the time the complaint is created. *Id.* at ¶ 28. Undersigned has never used the additional pornographic movies on Exhibit C to assert improper leverage to coerce a settlement. *Declaration of Mary Schulz* at ¶ 5. Indeed, it had never crossed undersigned's mind, period. *Id.* at ¶ 7. Indeed, undersigned is already representing a client that is suing for the infringement of copyrights covering erotic adult movies. *Id.* Regardless, the purpose of Exhibit C is not now nor has it ever been to use it to embarrass defendants into settling. *Id. See also Declaration of M. Keith Lipscomb* at ¶ 29.

The purpose of Exhibit C is to make Malibu Media's case stronger. *Declaration of M. Keith Lipscomb* at ¶ 30. As explained below, Exhibit C does make Malibu Media's case stronger. Indeed, Exhibit C better enables Plaintiff to identify the infringer and overcome common defenses. *Id.* at ¶ 31.

**G.** **Malibu Media Has a Proper Purpose For Attaching Exhibit C**

*1.* *Exhibit C is Intended to Assist Malibu Media in Identifying the Infringer*

Exhibit C is analogous to a thousand crumbs of bread all of which lead directly to the infringer. *Id.* at ¶ 32. This is important because BitTorrent copyright infringement litigation is basically a "whodunit." *Id.* Malibu Media sues the subscriber of the internet which was used to infringe. *Id.* at ¶ 33. It alleges in good faith that the subscriber is the infringer. *Id.* This allegation is not only plausible but most often true. *Id.* However, in some instances, someone living in the subscriber's home is the infringer. *Id.* at ¶ 34. Usually (although not always) the defendant will initially deny committing the infringement. *Id.* at ¶ 35. The information on Exhibit C is intended to enable Malibu Media to identify the actual infringer. *Id.* at ¶ 36. In short, the electronic evidence associated with defendants' connections to all or some of the content on Exhibit C paints a picture of a person. *Id.* at ¶ 37. This picture often includes

14

information about the infringers' hobbies, favorite movies and music, games, characters in games, computer software, computer hardware, academic interests, house renovation plans, favorite cities, sports teams, etc. *Id.*

### (a)    Demonstrative Hypothetical

A hypothetical example illustrates this point: a defendant is sued for infringing twelve of Malibu Media's movies.  The Cross Reference Tool (Exhibit C) shows that the defendant downloaded four Chicago White Sox games, an on-line Fantasy Role Playing Game, a how-to manual for fly fishing, and pornography for which the target audience is clearly heterosexual men.  First, because Plaintiff attached Exhibit C to the Complaint, the defendant will be less likely to deny the infringement because he knows Malibu Media can associate him with these things.  Second, if the defendant does deny the infringement, Plaintiff will depose defendant and establish that he is a lifelong White Sox fan, is "Merlin" in the on-line Fantasy Role Playing Game, enjoys fly fishing, and is a heterosexual man.

### (I)    Third Party Subpoenas

If perjured testimony is proffered during the hypothetical defendant's deposition, Plaintiff can subpoena the Fantasy Role Playing game, Google's search results, and other third parties to impeach defendant.

### (II)    Forensic Computer Examinations

Similarly if Defendant testifies he did not use BitTorrent to download these files, Plaintiff's computer forensic expert can look for evidence of the files on the Defendant's computer.  Even if these files have been deleted, they may still be in the unallocated space of the computer.

Ultimately, the ability of a defendant to deny all of the tying evidence on an Exhibit C is not only difficult but dangerous because so much of it can be verified through third party subpoenas and computer forensics.

> 2.  *Exhibit C is Intended to Be Used by Innocent Subscribers in Conjunction With the Exculpatory Evidence Request Form*

Malibu Media and its counsel believe that the infringer is almost always – meaning ninety-nine plus percent of the time – a resident (or *de facto* resident) in the subscriber's home. *Id.* at ¶ 38.  As previously stated, the infringer is usually the subscriber.  *Id.*  However, if the Doe Defendant is an innocent subscriber then he or she will know the infringer well.  *Id.*

Exhibit C is attached to complaints for the purpose of allowing an innocent subscriber to review it and identify the infringer.  *Id.* at ¶ 39.  Toward that end, each complaint attaches an Exculpatory Evidence Request Form.  Malibu Media intends for an innocent subscriber to use the Exculpatory Evidence Request Form and Exhibit C to identify the actual infringer; and, thereafter, tell Plaintiff the identity of the infringer – all prior to Plaintiff serving any party.  *Id.* at ¶ 40.  From Plaintiff's perspective, giving an innocent subscriber the opportunity to do this is not only fair and morally right – it is also in Malibu Media's financial interest.

To explain, attorneys' fees are discretionarily awardable under the Copyright Act.  When a Doe Defendant refuses to identify the infringer despite Malibu Media's request and, thereafter, Malibu Media voluntarily dismisses that Doe Defendant with prejudice so that it can sue the actual downloader, the initial Doe Defendant will legally be deemed to be the prevailing party.  The initial Doe Defendant could then bring a motion for attorneys' fees.  In response to any such motion, Malibu Media would argue that an award of attorney fees against it would be inconsistent with the purpose of the Copyright Act, in part, because the Doe Defendant did not –

16

but could have – told Plaintiff the identity of the infringer prior to being served. There is significant case law to support Malibu Media's position under these circumstances.

### 3. Exhibit C Is Intended to Prove that the Defendant is a BitTorrent User

The information on Exhibit C is intended to assist Plaintiff in proving that a defendant is a BitTorrent user. *Id.* at ¶ 41. To explain, many defendants deny under oath that they have ever used BitTorrent. *Id.* at ¶ 42. Whether a defendant has ever used BitTorrent is relevant to whether the defendant used BitTorrent to download and distribute Malibu Media's movies. *Id.* Plaintiff is able to prove many defendants' denials are incredible by establishing a connection between the content on Exhibit C and those defendants. *Id.* at ¶ 43.

By making Exhibit C a part of the complaints, defendants must either admit or deny the allegations. Out of the scores of answers Plaintiff has reviewed, no one has ever admitted to using BitTorrent. Thus, the denial will enable Plaintiff to impeach a defendant later in the case. Further, a defendant who knows there is additional evidence of infringement will be less likely to deny the infringement or commit perjury, particularly since some of the third party infringements may be able to be verified through third party subpoenas.

### 4. Exhibit C is Intended to Prove the Infringer Resides in the Subscriber's House

The information on Exhibit C is intended to prove that the infringer resides in the subscriber's house. *Id.* at ¶ 44. By establishing that the infringement occurred consistently over a long period of time, Malibu Media is more easily able to disprove a defendant's assertion that a guest or other non-resident committed the infringement. *Id.* at ¶ 45. First, the further one is away from a wireless router the slower the internet connection. *Id.* at ¶ 46. Repetitive hits in rapid succession evince close proximity to the router. *Id.* Second, a long history of infringement makes it much less probable that someone was "camping out" near a defendant's house for the

17

purpose of illegally downloading pornographic movies through BitTorrent. *Id.* at ¶ 47. As strange as that defense sounds, it is repeatedly raised against Malibu Media in these cases. *Id.*

        5.    *Exhibit C is Intended to Prove the Defendant Had Knowledge of the Infringement*

Exhibit C is intended to prove that a defendant had knowledge of the infringement. *Id.* at ¶ 48. To explain, some of the copyright owners of the works contained on an Exhibit C may have sent defendant a DMCA notice.[6] *Id.* at ¶ 49. If the defendant has received a DMCA notice then said defendant cannot credibly deny that he or she was unaware that his or her internet was being used for infringing purposes. *Id.* Additionally, BitTorrent is a bandwidth hog.[7] *Id.* at ¶ 50. And, heavy BitTorrent users often exceed their internet service provider's maximum allowable bandwidth use policy. *Id.* Many internet service providers warn heavy BitTorrent users about exceeding the provider's bandwidth use policy and advise the subscriber to secure his or her Wi-Fi router. *Id.* at ¶ 51. These warnings are associated with the BitTorrent use pled on Exhibit C. *Id.* Finally, the internet speed of many wireless routers decreases with use. *Id.* at ¶ 52. Put another way, bandwidth can be analogized to a water pipe. Divide the water pipe too many times and only a trickle of water will come out. If one's internet speed is incredibly slow it may be a sign of heavy BitTorrent use. *Id.* at ¶ 53. Several Doe Defendants have admitted to

---

[6] The Motion Picture Association of America and the Recording Industry Association of America have recently started a program called "Six Strikes." Participation in it is limited to members of those trade associations. The trade associations are sending DMCA notices to BitTorrent users. Each step of the Six Strike process escalates in intensity by the ISP. Malibu Media attempts to find Defendants that are likely to have received DMCA notices from these entities.

[7] *See* http://torrentfreak.com/bittorrent-accounts-for-35-of-all-upload-traffic-vpns-are-booming-130518/ estimating that 35% of all upload internet traffic is through BitTorrent. *See also*, http://en.wikipedia.org/wiki/Bit_torrent_search_engine#Decentralized_keyword_search estimating that 35% of all internet traffic is consumed by people using BitTorrent.

knowing that their internet speed was unusually slow but until pressed denied knowing about BitTorrent.

### 6. *Exhibit C is Intended to Support Malibu Media's Argument that Its Claims are Plausible*

Malibu Media intends for Exhibit C to assist it in arguing that its claims are plausible under Rule 12(b)(6). *Id.* at ¶ 54. While Malibu Media has never had a case dismissed pursuant to Fed. R. Civ. P. 12(b)(6), many Doe Defendants file motions arguing that it is not plausible for Plaintiff to identify the infringer from an IP Address. *Id.* at ¶ 55. Exhibit C contains a plethora of information about the defendant beyond their merely having downloaded Malibu Media's movies. *Id.* Finally, as discussed in the argument section, the Honorable Judge Wright in the Central District of California held that additional surveillance of a defendant's BitTorrent use is necessary to state a plausible claim under Rule 12(b)(6). He further held pleading that this additional surveillance was performed is necessary for a plaintiff to comply with Fed. R. Civ. P. 11's requirement that a plaintiff perform an adequate pre-suit factual investigation.

### 7. *Exhibit C is Intended to Frame the Boundaries of Discovery*

By attaching Exhibit C to the complaints, Plaintiff is bringing it within the scope of discovery topics associated with the third party infringements, including possibly DMCA notices, which may be relevant to proving its case. *See United States v. Medtronic, Inc.*, 2000 WL 1478476 (D. Kan. July 13, 2000) ("[w]hen determining the scope of discovery, the natural focus is on the geographical boundaries referenced within the complaint").

Case 2:13-cv-00544-RTR   Filed 10/04/13   Page 19 of 48   Document 19

8. *Some Courts in the Seventh Circuit Prohibit Plaintiff from Speaking With Defendant Before Serving Defendant with the Complaint*

Plaintiff made a choice *not* to talk to defendants prior to serving them, in part, because some courts prohibited the practice. *See e.g. Malibu Media, LLC v. John Does 1-11*, 12-cv-01117-WTL-MJD (S.D. In. Sept. 19, 2013) at CM/ECF 18 ("Plaintiff shall . . . refrain from any communication with any of the putative Defendants without express leave of the Court.") Accordingly, contacting defendants privately before serving them with the Complaint regarding the information contained on Exhibit C was not feasible. And, Plaintiff wanted to allow the defendants to review Exhibit C for, among other reasons, using the Exculpatory Evidence Request Form to tell Plaintiff the identity of the infringer.

## H.    **Malibu Media's Counsel Habitually Use Exhibit C For Its Intended Purpose**

There are too many examples of the proper use of the Cross Reference Tool and Exhibit C to be fully chronicled in this response. Nevertheless, what follows is a brief summary of ten examples:

- Defendant filed a motion for Plaintiff to post a bond for attorney's fees, claiming he is likely to be the prevailing party. He attached a declaration stating he did not use BitTorrent nor commit the infringement. Defendant's public LinkedIn profile listed himself as an expert user of occupational software called SolarWinds. Defendant's Cross Reference contained that exact software. *See Declaration of Paul Nicoletti* at ¶¶ 8 - 14.

- **[REDACTED]**

- **[REDACTED]**

- Defendant in the Bellwether trial filed a declaration stating he previously had an open Wi-Fi network for anyone to access and upon learning of the lawsuit, he secured it. He promised that the infringement will stop. The Cross Reference showed the infringement through

20

BitTorrent continued, with the exception of Malibu Media's movies, for approximately four more months. It did not stop until Defendant's counsel was notified of the Cross Reference. The Cross Reference enabled Defendant to identify the infringer in his home. *See Declaration of Christopher P. Fiore* at ¶¶ 7 - 15.

- **[REDACTED]**

- **[REDACTED]**

- **[REDACTED]**

- **[REDACTED]**

- **[REDACTED]**

- **[REDACTED]**

I. **The Exhibit C Identified by This Court as Potentially Objectionable Contains Relevant Information**

   1. *Exhibit C May Be Used to Identify Defendant*

In the three cases before this Court, Plaintiff has only received the identifying information regarding Defendant in case no. 13-cv-00544-RTR. In this case, Exhibit C has accurately correlated the Defendant to the infringements, just as is its intended purpose. Indeed, Exhibit C has provided relevant information linking Defendant to the infringements alleged in this case based on Defendant's public social media file, before Plaintiff has even entered discovery.

Upon receiving the identity of Defendant, Plaintiff researched public information available about Defendant including Defendant's public social media information on Facebook, LinkedIn, Twitter, and message board postings to correlate to Exhibit C. **[REDACTED]**

As discovery proceeds, Plaintiff intends to examine evidence on Defendant's computer, review credit card receipts of similar purchases, review his educational and work history, and

21

analyze other information it receives from discovery to correlate Defendant to his hobbies and background emphasized on Exhibit C. It is likely that many more downloads on Exhibit C will independently correlate to Defendant.

> 2. *Exhibit C May Be Used to Impeach Defendant*

**[REDACTED]** Significantly, this type of information was outcome dispositive in the Bellwether Trial for defendant Bryan White. Indeed, Bryan White deleted his hard drive and attempted to perpetrate a fraud on Plaintiff and the Court. *See* Exhibit A.

> 3. *Knowledge and Absence of Mistake*

**[REDACTED]**

> **J.** **During the Process of Selecting Defendants, Counsel Does Not Consider Whether A Specific Downloaded File Will Embarrass a Defendant**

Each month approximately 80,000 U.S. citizens steal Plaintiff's movies through BitTorrent. *Declaration of Colette Field* at ¶ 13. From that universe of potential defendants, each month in 2013, counsel for Plaintiff has chosen between 100-200 defendants to sue. *Declaration of Emilie Kennedy* at ¶ 5. The goal is to pick the worst of the worst infringers, and those defendants against whom Plaintiff can win a case. *Id.* at ¶ 6. Accordingly, a computer script is run to cull down the universe **[REDACTED]** *Id.* at ¶ 7. Significantly, the script does not include a content filter, much less one that seeks to locate embarrassing content. *Id.* Once the universe has been narrowed, an attorney reviews the potential defendants' Cross Reference hits. *Id.* at ¶ 8.

The goal is to find the cases which have the best evidence on them that will aid Plaintiff in identifying a specific person. *Id.* at ¶ 9. That is the primary purpose of the culling process during suit creation. *Id.* People are *not* intentionally chosen because of any particular offensive material on the Cross Reference. *Id.* at ¶ 10. None of Malibu Media's attorneys have ever been

22

instructed by Malibu Media to intentionally choose particularly offensive material to be included on Exhibit C. *Id.* at ¶ 11. None of Malibu Media's attorneys have ever discussed between or among themselves that Exhibit C should contain offensive material. *Id.* at ¶ 12. In short, this is not a purpose either Plaintiff or its counsel has *ever* considered. *Id.* at ¶ 13.

**K.** **Exhibit C Has Received Extensive Judicial Scrutiny and Has Been Found to be Proper**

As part of the Bellwether cases, Judge Baylson scrutinized Plaintiff's Cross Reference hits when a defendant raised similar concerns. *See Malibu Media, LLC v. John Doe 1*, CIV.A. 12-2078, 2013 WL 30648 (E.D. Pa. Jan. 3, 2013). Ruling on the *exact issue* before this Court, Judge Baylson held "[a]fter consideration, the Court finds no need to strike Paragraph 53 or Exhibit F[8] of the Amended Complaint in 12–2088 or to issue sanctions. Malibu has included this material in order to show a pattern or practice of infringement by Doe 13. It is not suing upon these infringements; it is making an allegation which may become evidence to support its claim to relief." *Malibu Media, LLC v. John Doe 1*, CIV.A. 12-2078, 2013 WL 30648 (E.D. Pa. Jan. 3, 2013).

Prior to the show cause issued in Judge Conley's cases, Malibu Media received 415 separate orders granting it leave to subpoena a defendant's ISP in an individual suit that contained Exhibit C. These orders span 14 (fourteen) separate districts, including nearly every district court in the Seventh Circuit. *See* Exhibit B. Further, Plaintiff's counsel in Florida recently attended two hearings presided over by two separate judges. Each of these judges inquired specifically about the purpose of Exhibit C. Neither judge found that Malibu Media's inclusion of it was improper. *See Declaration of Emilie Kennedy* ¶¶ 33 - 39 and *Declaration of Jason Cooper* ¶¶ 6 - 11. And, as set forth below, Judge Jonker in the Western District of

---

[8] In this case Plaintiff's Exhibit C happened to be filed as "Exhibit F".

Michigan denied a Motion to Strike Exhibit C, finding the information relevant to the case.

**L.** **The RIAA Attached a Very Similar Exhibit For Reasons That Cannot Possibly Be Attacked On The Basis that the Purpose Was to Embarrass a Defendant**

In the mid to late 2000s, the Recording Industry Association of America ("RIAA"), in the name of various Plaintiffs, sued between 15,000 and 25,000 people for illegally distributing and downloading songs through peer-to-peer networks similar to BitTorrent. The RIAA attached Exhibits A and B to its complaints. Exhibit A contained a list of the infringed works. Exhibit B was a screen shot of the Defendants' entire file sharing folder (which typically included many works which were not the subject of the suit). *See e.g., Interscope Records v. Duty*, 2006 WL 988086, at *1-2 (D. Ariz. Apr. 14, 2006) discussing Rule 8(a)(2) and Rule 10(c) the Court found the relevance of both exhibits to be clear:

> [T]he relevance of the two exhibits is clear. Duty is alleged to have illegally used Kazaa to download and distribute various copyrighted works. Therefore, based upon the complaint alone, it is clear to the court that exhibit B is an alleged representation of Duty's Kazaa share folder, and that exhibit A is a list of some songs that the Recording Companies claim were illegally downloaded.

The RIAA was not intending to embarrass a defendant by attaching additional evidence of infringement to its complaints. Nevertheless, just like Plaintiff here, the RIAA's reasonable attorneys did so and judges approved the practice. This is strong evidence that attaching Exhibit C to the complaints need not be motivated by an improper purpose.

**M.** **Malibu Media Intentionally Allows Defendants to Proceed Anonymously**

Malibu Media has informed its counsel to never oppose a defendant's motion to proceed anonymously. This has been the case across the board for *every* individual suit it has ever filed. Numerous courts throughout the country have documented this policy. While not a complete list *see Malibu Media, LLC v. John Does 1-16*, 902 F. Supp. 2d 690, 701 (E.D. Pa. 2012) ("Plaintiff does not object to the issuance of a protective order to prevent the public disclosure of the John

24

Does' identities"); *see also Malibu Media, LLC v. Reynolds*, 12 C 6672, 2013 WL 870618 (N.D. Ill. Mar. 7, 2013) (same); *Malibu Media LLC v. John Does 1-28*, 12-CV-12598, 2012 WL 7748917 (E.D. Mich. Oct. 31, 2012) (same); *Malibu Media, LLC v. John Does 1-23*, 5:12-CV-04442, 2013 WL 1389763 (E.D. Pa. Apr. 3, 2013) (same); *Malibu Media, LLC v. Doe*, 13-21579-CIV, 2013 WL 2950593 (S.D. Fla. June 14, 2013) (same); *Malibu Media, LLC v. Does 1-59*, 1CV12-0888 AWI DLB, 2012 WL 4465359 (E.D. Cal. Sept. 25, 2012) (same); *Malibu Media, LLC v. John Does 1-21*, 12 C 9656, 2013 WL 2458290 (N.D. Ill. June 6, 2013) (same); *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, No. 12-CV-02598-REB-MEH, 2013 WL 1777710 (D. Colo. Feb. 12, 2013) (same); *Malibu Media, LLC v. John Does 1-6*, 12 C 08903, 2013 WL 2150679 (N.D. Ill. May 17, 2013) (same); *Malibu Media, LLC v. John Does 1-48*, 2:12-CV-426-FTM-29, 2012 WL 6867308 (M.D. Fla. Nov. 15, 2012) (same).

N.    **Courts throughout the Country have Expressly Found that Malibu Media's Counsel do not Engage in Improper Litigation Tactics**

Most recently and notably, after concluding trial with Plaintiff, the Honorable Judge Baylson found Malibu Media did not use "unscrupulous tactics and false accusations to collect millions of dollars from innocent and injured computer users." *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 2013 WL 3038025 (E.D. Pa. June 18, 2013). Similarly, the Honorable Judge Hegarty of the District of Colorado stated: "the Court has also witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement." *Malibu Media, LLC v. John Does 1-2, 4-8, 10-16, 18-21*, 2013 WL 1777710 (D. Colo. Feb. 12, 2013).

Other courts have also opined that the criticism Plaintiff receives is unwarranted. "Furthermore, Doe 5 has not presented any evidence that Malibu has engaged in harassing behavior for the Court to consider, nor has the Court observed bad faith behavior or the use of

25

improper tactics on its part thus far." *Malibu Media, LLC v. John Does 1-6*, 12 C 08903, 2013 WL 2150679 (N.D. Ill. May 17, 2013). *See also Malibu Media, LLC v. John Does 1-5,* 2012 WL 3641291, at *4 (S.D.N.Y. 2012) (same); *Malibu Media, LLC v. John Does 1-30*, 2:12-cv-13312-DPH-MJH [CM/ECF 61] at p. 15 (E.D. Mich. May 16, 2013) (same); *Malibu Media, LLC v. Reynolds*, 2013 WL 870618 at *7 (N.D. Ill. Mar. 7, 2013) ("the fact that suits of this nature settle quickly does not mean there is any wrongdoing on the part of copyright owners."); *Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] at p. 7 (M.D. Fla. July 6, 2012) (same).[9]

O. **Malibu Media's Current Policy is Not to Contact Doe Defendants Regarding Settlements**

In connection with beginning to sue infringers individually, Malibu Media's counsel discussed between and among themselves a policy by which they would *not* contact doe defendants that were sued in an individual suit for the purpose of soliciting a settlement.[10]  That policy has been in effect for *every* individual suit that Malibu Media has filed.  Significantly, that policy was in effect at the time the instant suits were filed.  Accordingly, no phone calls or letters have ever been sent to doe defendants soliciting a settlement in an individual suit.  Instead, doe defendants' attorneys routinely call Plaintiff's counsel for the purpose of discussing a dispute.  Usually at the request of opposing counsel, those conversations involve settlement negotiations.  And, Malibu Media's attorneys, including undersigned, negotiate with adverse counsel in good faith.

---

[9] The only judges that have ever severely criticized Plaintiff's litigation did so *sua sponte* without giving Malibu Media the opportunity to explain its actions.

[10] This is a pre-service policy.  During the lawsuit, Rule 26(f) requires the parties to discuss settlement.  And, if necessary or appropriate, Plaintiff may first raise the issue of settling a matter during an active litigation.

To be clear, in every individual case filed by undersigned, undersigned is the attorney and only person who negotiates a settlement. It is undersigned's reputation for fair dealing which is at stake if an improper tactic is used. Like most lawyers, undersigned's reputation is her greatest asset, and undersigned is not willing to risk undersigned's reputation for any reason, period.

Significantly, it has also been Malibu Media's policy, absent compelling exculpatory evidence, to serve every defendant sued in an individual case. In short, while Malibu Media is not adverse to resolving a dispute early in the process, Malibu Media intends to litigate and win its individual cases including all at issue here.

## III.     LEGAL STANDARD FOR FED. R. CIV. P. 11(B)(1)

Rule 11(b)(2) *only* permits a court to enter sanctions when it finds that a party filed a paper for "an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11. "It is important for federal courts, district and appellate, to keep in mind the serious consequences that can flow from an award of [Rule 11] sanctions against an attorney." *Harlyn Sales Corp. Profit Plan v. Kemper Financial Services, Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993) (refusing to sanction an attorney when there was doubt). Rule 11 "is a tool that must be used with the utmost care and caution." *FDIC v. Tekfen Construction and Installation Co., Inc.*, 847 F.2d 440, 444 (7th Cir. 1988) (reversing District Court's entry of Rule 11 sanctions). "A lawyer's reputation for integrity, thoroughness and competence is his or her bread and butter," and should not be impugned absent careful analysis. *Id.* Courts are "expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading . . . was submitted." *Harlyn* at 1269.

"Subjective bad faith or malice [is relevant] when the suit is objectively colorable."

*Brown v. Federation of State of Medical Boards of U.S.*, 830 F.2d 1429 (7th Cir. 1987), *rev. on other grounds*. The Seventh Circuit explained Rule 11(b)(1) "effectively picks up the torts of abuse of process (filing an objectively frivolous suit) and malicious prosecution (filing a colorable suit for the purpose of imposing expense on the defendant rather than for the purpose of winning)." *Id.* The Seventh Circuit went beyond merely describing a party's subjective intent as relevant by holding that in the context of a Rule 11(b)(1) motion, "the district court *must* find out why Szabo-Digby pursued litigation" (emphasis added). *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1083 (7th Cir. 1987). Further, "[c]ourts *must* determine if there is sufficient evidence in the record to show an improper purpose when imposing Rule 11 sanctions." *DeBartolo v. Health and Welfare Dept. of Const. and General Laborers' Dist.*, 2011 WL 1131110, *12 (N.D. Ill. 2011) (emphasis added.) "Courts refuse to *infer* an improper purpose from a filing which is well-grounded in fact and warranted by law." *Vandeventer v. Wabash National Corp.*, 893 F.Supp. 827, 840 (N.D. Ind. 1995) (emphasis added).

When, as here, there is direct evidence of a proper purpose judicial speculation is *not* a sufficient basis to sustain a sanctions order. *See Reed v. Great Lakes Companies, Inc.,* 330 F.3d 931 (7th Cir. 2003). ("The sanctions order thus appears to rest on nothing more solid than the judge's speculation that Reed is an extortionist. The speculation is too thin to sustain that order.") The facts of Reed are illustrative. Reed had previously sued 15 different employers for discrimination in violation of Title VII. None of the previous judges in the 15 discrimination lawsuits found his lawsuits to be frivolous. Nevertheless, the reversed judge speculated that Reed was an extortionist. The Seventh Circuit reversed because pure speculation is insufficient.

Further, Circuit Courts throughout the country have adopted a heightened standard when determining sanctions in *sua sponte* Rule 11 sanctions proceedings. *See In re Pennie &*

28

*Edmonds LLP*, 323 F.3d 86, 89-90 (2d Cir. 2003) ("court-initiated sanction proceedings would be used only in more egregious circumstances"); *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115-16 (9th Cir. 2001) ("[The Rule 11] standard is applied with particular stringency where, as here, the sanctions are imposed on the court's own motion"); *Hunter v. Earthgrains Co. Bakery*, 281 F.3d 144, 151 (4th Cir. 2002) ("[A] court is obliged to use extra care in imposing sanctions on offending lawyers."); *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003) (same).

## IV.    ARGUMENT

### A.    This Court Should Not Follow Judge Conley's Opinion and Order

The Honorable Judge Conley's Opinion and Order in the Western District of Wisconsin, *Malibu Media LLC v. John Doe subscriber assigned IP address 24.183.51.58*, 2013 WL 4821911 (W.D. Wis. Sept. 10, 2013), was based upon purported "circumstantial evidence of ill intent" and focused heavily on the argument that "there exists no good basis upon which *a reasonable attorney* . . . could conclude that attachment of Exhibit C to a complaint for 'evidentiary purposes only' served any *legitimate* purpose at that stage of the litigation." *Id.*, at *4. Plaintiff and undersigned respectfully disagree. Courts within and outside of the Seventh Circuit have held that Exhibit C has valid purposes and may be properly filed with Plaintiff's Complaint.

#### 1.    An Objectively Reasonable Attorney May Conclude That Attaching Exhibit C at the Pleading Stage of Litigation Serves a Legitimate Purpose

As described herein, Plaintiff's Exhibit C serves a number of valid purposes and is properly filed for numerous reasons. An objectively reasonable attorney could conclude that attaching Exhibit C to the complaint serves legitimate purposes. Neither Plaintiff nor its counsel ever had either a subjectively or objectively bad faith purpose for filing Exhibit C. Plainly

29

stated, Exhibit C was never meant as a tool to harass, embarrass, or coerce settlement. Citing the Seventh Circuit, the Honorable Judge Conley relayed that "it is not enough that the attorneys' subjective belief and purpose are innocent; it is also necessary that such mental state be based upon reasonable inquiry, objectively analyzed, into the basis for the facts alleged and into the law." *Malibu Media LLC v. John Doe subscriber assigned IP address 24.183.51.58*, 2013 WL 4821911, at *4 (W.D. Wis. Sept. 10, 2013) citing *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Serv's, Inc.* 9 F.3d 1263, 1270 (7th Cir.1993).

The *Harlyn Sales Corp* case on which the Honorable Judge Conley relied concerned sanctions under Rule 11(b) for an alleged failure to conduct adequate investigation into the facts. Denying a motion for sanctions, the district court held that "[m]erely because plaintiffs' case proved to be weak, plaintiffs' counsel should not be reprimanded[.]" *Id.*, at 1267. It was <u>not</u> a case that dealt with filing a document motivated by an improper purpose.

> [T]he complaint was sufficiently grounded in fact and warranted by a good faith argument for extension of existing law to make Rule 11 sanctions unwarranted. First, plaintiffs' counsel's factual and legal inquiry was reasonable . . . Second, the *defendants do not contend, and the magistrate did not find, that plaintiffs' counsel filed the cause of action in bad faith or for an improper purpose.* Third, the theories plaintiffs' counsel asserted were objectively good faith arguments for the extension of the law . . . Fourth, although the magistrate judge determined that it should have been apparent from the investigation that the literature did not contain any "promises," plaintiffs' counsel did not ground the complaint on explicit "promises" in the literature.

*Id.*

In appealing the court's decision to deny sanctions, the defendant-appellants argued that "the court must use an objective standard in determining whether a party's prefiling inquiry was reasonable." *Id.*, at 1270. The Seventh Circuit agreed but noted that the subjective intent must be examined first.

The Court must first determine if the attorney signing the pleading subjectively believed that what is stated in the pleading 'is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and that it is not interposed from any improper purpose…' To this extent, the Court is examining the subjective 'belief' and 'purpose' of the attorney signing the pleading. But it is not enough that the attorneys' subjective belief and purpose are innocent; it is also necessary that such mental state be based upon reasonable inquiry, objectively analyzed, into the basis for the facts alleged and into the law.

*Id.*

Respectfully, the *Harlyn Sales Corp* case on which Judge Conley relies is not on point. The standard announced in the *Harlyn Sales Corp* case, when properly applied, requires two steps to evaluate whether or not a reasonable prefiling inquiry was performed. In the case before Judge Conley there was no issue as to whether or not Plaintiff had conducted an adequate prefiling inquiry or whether or not counsel was advocating a position warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. Accordingly, the *Harlyn Sales Corp* standard does not apply.

To the extent that the Honorable Judge Conley quoted *Harlyn Sales Corp* to support the premise that Plaintiff's subjective innocent intent in filing Exhibit C is not enough, and that an objective analysis reveals that no reasonable attorney could find that attaching Exhibit C to the complaint serves a legitimate purpose, Plaintiff and undersigned respectfully disagree. Specifically, no objective analysis into Plaintiff's subjectively innocent mental state was ever performed. Instead, it was summarily determined that "sanctions may be warranted where an objectively reasonable attorney should know that: (1) there is no real need to take a given litigation action; and (2) the action would substantially harass or embarrass the opposing party." *Malibu Media LLC v. John Doe subscriber assigned IP address 24.183.51.58*, 2013 WL 4821911, at *4 (W.D. Wis. Sept. 10, 2013). Finding that Plaintiff acted outside of the standard of an objectively reasonable attorney was erroneous, as evidenced by various federal courts that

have directly addressed this same issue and found that attaching Exhibit C is not improper. For example:

• On September 30, 2013, Plaintiff's counsel in Michigan attended a hearing on a defendant's motion to strike Exhibit C based upon his argument that the purpose of the exhibit was to harass and embarrass the defendant and that the exhibit had no legitimate purpose for inclusion in the complaint. The court denied the defendant's motion stating:

> *I'm going to deny the motion to strike. I think that that should be reserved under 12(f) for things that are genuinely completely impertinent to the case, things that are really only amendable to one interpretation, namely, the idea that somebody wants in a public document to slander or otherwise drag somebody's name through the mud.* And although I understand the defense position that that's what's happening here, the truth is the copyrighted works themselves have names that are suggestive, and that would be under even the most narrow reading of the pertinent allegations within the scope of a proper allegation. And the lengthier one has some that are of the same character but a lot of others that aren't, that are just television shows, and in some sense would be less objectionable or problematic.
> *But more to the point, all of that stuff is, I think, potentially germane to what's going on, especially when we're trying to find out is it this person whose name is associated in at least one place with the IP address or is it somebody else who is misusing the IP address? And 404(b) does anticipate evidentiary use of some of these other things. The plaintiff certainly doesn't have an obligation to plead everything, but it doesn't necessarily have a prohibition either. Rule 8 is a minimum standard, not a standard that precludes other useful information.*

*See* Transcript of Rule 16 Scheduling Conference Before the Honorable Robert J. Jonker, *Malibu Media, LLC v. Marc Wilson*, 1:13-cv-00357-RJJ, CM/ECF 22, at pp. 7:19-25, 8:1-17, Exhibit C. (Emphasis added.).

• On August 16, 2013, the Honorable John E. Martin of the U.S. District Court for the Northern District of Indiana denied a defendant's request to stay the case and order Plaintiff and its attorney to "show cause why it should not be sanctioned under Rule 11(b)." *Malibu Media, LLC v. John Doe*, 2:13-cv-00055-JVB-JEM, CM/ECF 22, at p. 8 (N.D. Ind. Aug. 16,

32

2013).  Defendant's request relied on Judge Crocker's Order from the Western District of Wisconsin (which prompted Judge Conley's Opinion) and Judge Martin ultimately held:

> *The actions of the Western District of Wisconsin court are not binding on this Court* . . . Unlike Judge Crocker's examples, *the names of files in Exhibit C in this case appear no more lewd or embarrassing than those of Plaintiff's copyrighted works.*  Plaintiff's attorney in this case is different from the attorney before Judge Crocker, and there may be other factors which differentiate this case from the cases before Judge Crocker.
>
> While it is unclear from the face of the Complaint what "evidentiary purposes" Exhibit C serves or why Plaintiff feels it appropriate to present "evidence" at the pleading stage, *Exhibit C is not so obviously irrelevant that this Court is prepared to assume Exhibit C was attached for the sole purpose of harassing Defendant or to sua sponte order Plaintiff to show cause for why it should not be sanctioned under Rule 11(b).*

*Id.*, at pp. 9-10. (Emphasis added.).

•  As part of the Bellwether cases, Judge Baylson scrutinized Plaintiff's Cross Reference hits when a defendant raised similar concerns.  *See Malibu Media, LLC v. John Doe 1*, 2013 WL 30648 (E.D. Pa. Jan. 3, 2013).  Ruling on the *exact issue* before this Court, Judge Baylson held "[a]fter consideration, the Court finds no need to strike Paragraph 53 or Exhibit F[11] of the Amended Complaint in 12–2088 or to issue sanctions.  Malibu has included this material in order to show a pattern or practice of infringement by Doe 13.  It is not suing upon these infringements; it is making an allegation which may become evidence to support its claim to relief."  *Malibu Media, LLC v. John Doe 1*, 2013 WL 30648 (E.D. Pa. Jan. 3, 2013).

Additionally, Plaintiff has received 415 separate orders granting it leave to subpoena a defendant's ISP in an individual suit that contained Exhibit C.  These orders span fourteen (14) separate districts including nearly every district court in the Seventh Circuit.  Further, Plaintiff's counsel in Florida attended two hearings presided over by two separate judges.  Each of these judges inquired specifically about the purpose of Exhibit C.  Neither judge found that Plaintiff's

---

[11] In this case Plaintiff's Exhibit C happened to be filed as "Exhibit F".

inclusion of the exhibit was improper. *See Declaration of Emilie Kennedy* ¶¶ 33 - 39 and *Declaration of Jason Cooper* ¶¶ 6 - 11.

The foregoing demonstrates that an objectively reasonable attorney in Plaintiff's position could file Exhibit C for legitimate purposes. Although the reasons for filing the exhibit may not be apparent from the outset, it is not objectively unreasonable to file it. Indeed, no opposing counsel or *pro se* defendant ever took issue with Plaintiff's Exhibit C prior to Judge Crocker's Order to Show Cause.

### 2. Plaintiff Should Not be Held to a Higher Standard Than Other Federal Court Litigants

Plaintiff respectfully suggests that it was held to a different standard than other federal court litigants because Plaintiff is engaged in the production and distribution of adult erotic films and the content of Plaintiff's copyrights may be embarrassing to some people. For example, Judge Conley's Opinion and Order states that "these internet copyright infringement cases already give off an air of extortion," and that therefore Plaintiff and undersigned should have acted differently in pursuing the case. *Malibu Media LLC v. John Doe subscriber assigned IP address 24.183.51.58*, 2013 WL 4821911, at *5 (W.D. Wis. Sept. 10, 2013). By broadly sweeping together all of Plaintiff's BitTorrent copyright infringement cases, and potentially other unrelated cases with similar claims, and stating that all such cases "already give off an air of extortion," the Court failed to give individual due consideration to the merits of each case. Respectfully, impugning an undefined group of cases brought by a common plaintiff and subjecting those cases to a specialized heightened standard is neither warranted nor proper.

Judge Conley further stated that counsel for adult entertainment companies "must already be aware that these cases are fraught with circumstances that could embarrass the putative defendant should they become public and strongly influence his or her decision to settle," and

34

that "[t]his should be enough" for Plaintiff and its counsel to recognize that Exhibit C should not have been filed. *Id.* This imposes a higher standard on Plaintiff by requiring it to consider the defendants' potential concerns about embarrassment before filing its case. Other federal court litigants are not required to consider a defendant's potential embarrassment before filing suit. "[I]n many cases embarrassment over being named a defendant in a lawsuit is an unavoidable part of the litigation process. The proper remedy is not to depart from the 'constitutionally-embedded presumption' of openness of judicial proceedings; the remedy is to vigorously defend the lawsuit." *Malibu Media, LLC v. John Doe*, 1:13-cv-00675-TWP-MJD, CM/ECF 27, p. 4 (S.D. Ind. Sept. 13, 2013) (denying motion to proceed anonymously).

In a similar BitTorrent copyright infringement lawsuit brought by a different plaintiff, the Honorable Judge Snow of the United States District Court for the District of Arizona denied a defendant's motion for a protective order despite the defendant's concern about embarrassment, holding: "Although the Court acknowledges that there is some social stigma attached to consuming pornography, Defendant strenuously denies the allegations, and it is the rare civil lawsuit in which a defendant is not accused of behavior of which others may disapprove. The nature of the allegations alone do not merit a protective order." *Patrick Collins, Inc. v. John Does 1-54*, 2012 WL 911432, at *4 (D. Ariz. 2012). Similarly, the Honorable Judge Hegarty from the United States District Court for the District of Colorado who is charged with overseeing all of Plaintiff's similar litigation in the State of Colorado has expressly condemned specialized treatment for Plaintiff due solely to the nature of its business.

> I do not feel the freedom to violate the Federal Rules of Civil Procedure and put undue burden on the plaintiff here either, so I've tried to be very careful in - - in giving them the benefit of the law, which I have to because every - - <u>every entity that appears before the U.S. District Court is entitled to equal treatment, equal process</u> . . . <u>I have seen what I think is unnecessary hostility toward these cases</u> because, frankly, it's Congress that did this. <u>Congress created the law that gives</u>

35

> Malibu Media the authority to bring lawsuit, and Congress can change the law,
> but in the meantime, the courts are limited to applying the law[.]

*Patrick Collins, Inc. v. Does 1-23,* 1:12-cv-01641-MSK-MEH (D. Colo. Oct. 10, 2012),
*Transcript of Hearing on October 10, 2012,* at pp. 7:12-18 and 8:1-6, Exhibit D.

### B.   This Court Should Not Sanction Undersigned Because of the Corrective Efforts Made to Withdraw Exhibit C

"Rule 11 contemplates that parties should be given the opportunity to withdraw sanctionable pleadings before being subjected to a penalty." *Tallman v. Freedman Anselmo Lindberg, LLC*, 2012 WL 589020 (C.D. Ill. Feb. 22, 2012). The Advisory Committee Notes for Rule 11 specifically recognize that when a district court *sua sponte* issues a show cause, the litigant is deprived of the opportunity to withdraw the alleged offending activity. In doing so, the Advisory Committee Notes instructs courts to apply a standard "akin to a contempt of court" and consider any such corrective action made by the litigant when deciding whether a sanction is appropriate.

> Since show cause orders will ordinarily be issued only in situations that are akin to a contempt of court, the rule does not provide a "safe harbor" to a litigant for withdrawing a claim, defense, etc., after a show cause order has been issued on the court's own initiative. Such corrective action, however, should be taken into account in deciding what--if any--sanction to impose if, after consideration of the litigant's response, the court concludes that a violation has occurred.

Fed. R. Civ. P. 11 Advisory Committee Notes.

The Advisory Committee Notes expressly urge courts to consider corrective measures made by litigants. Accordingly, courts throughout the country have noted that the "spirit of the rule" requires courts to consider any such withdrawal or correction. *See Wesely v. Churchill Dev. Corp.,* 99 F.3d 1141 (6th Cir. 1996) ("By refusing to entertain withdrawal or correction, the district court abused its discretion"); *Perez v. Posse Comitatus,* 373 F.3d 321, 326 (2d Cir. 2004)

36

("corrective action [e.g., withdrawal of a claim or defense] ... should be taken into account in deciding what-*if any*-sanction to impose").

Indeed, the plain language of the Rule states "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11 (c)(4). "Rule 11 does not allow boundless sanctions." *CSX Transp., Inc. v. Total Grain Mktg., LLC*, 2012 WL 4827626 (S.D. Ill. Aug. 3, 2012).

Here, undersigned has taken corrective action to file Exhibit C under seal in every single case in the Eastern District of Wisconsin and the Northern District of Illinois where she represents Malibu Media. Further, Plaintiff Malibu Media has instructed its counsel nationwide to never file Exhibit C with a complaint again. And, its counsel has taken corrective measures in the District Court of Colorado, the District Court of New Jersey, the Southern District of Indiana, and the Middle and Southern Districts of Florida. Imposing a sanction on Plaintiff or undersigned now, after such measures have been made, would violate the "spirit of the rule" and not be limited to "what suffices to deter repetition of the conduct".

## C.   <u>Sanctions Are Inappropriate Because Plaintiff Files Exhibit C With a Proper Purpose</u>

As set forth above, Plaintiff and its counsel habitually use Exhibit C for (a) determining the identity of the infringer; (b) allowing an unserved doe defendant the ability to provide Plaintiff with the identity of the actual infringer; (c) proving that defendant is a BitTorrent user; (d) proving that the infringer resides in defendant's home; (e) proving that defendant had knowledge of BitTorrent use; (f) impeaching defendant; (g) determining if a defendant wiped his hard drive or destroyed evidence; and (h) proving that Plaintiff's claims are plausible. All of these reasons are proper.

37

**D.** **Fed. R. Civ. P. 10(c) Expressly Authorizes Plaintiff to Attach Exhibits**

Fed. R. Civ. P. 10(c) expressly allows a party to attach exhibits to a complaint: "a statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10 (c). "Federal Rule 10(c) authorizes the incorporation of 'any written instrument which is an exhibit' attached to a pleading and makes the material thus incorporated an integral part of that pleading for all purposes." § 1327 Exhibits as Part of the Pleadings, 5A Fed. Prac. & Proc. Civ. § 1327 (3d ed.).

**E.** **Sanctioning Plaintiff Would Impede Its Ability to Comply with Rule 11(b)(2)**

Consequences exist when a Plaintiff does not attach an exhibit central to its claims to its complaint. "[W]hen the plaintiff fails to introduce a pertinent document as part of her pleading, a significant number of cases from throughout the federal court system make it clear that the defendant may introduce the document as an exhibit to a motion attacking the sufficiency of the pleading; that certainly will be true if the plaintiff has referred to the item in the complaint and it is central to the affirmative case." *Id. See also Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss.")

Here, Exhibit C is central to Malibu Media's claims because it establishes Plaintiff can plausibly identify the infringer. Plaintiff has responded to dozens of Rule 12(b)(6) motions asserting Plaintiff's claims are not plausible. While these motions have consistently been denied, Judge Wright from the Central District of California recently opined in *Ingenuity 13, LLC v. John Doe*, 12-cv-8333-ODW, CM/ECF 48, that a copyright BitTorrent plaintiff may face Rule

11 violations for not attaching information contained in Plaintiff's cross reference to its complaint.

In Judge Wright's Order to Show Cause, Judge Wright found "[p]laintiff fails to allege facts in the Amended Complaint to show how Benjamin Wagar is the infringer, other than noting his IP address, the name of his BitTorrent client, and the alleged time of download." *Id*. Judge Wright further elaborated on suggestions for the plaintiff - to avoid Rule 11 sanctions. Specifically, Judge Wright suggested compiling other BitTorrent content a defendant is downloading to help identify whether the infringer lives in the subscriber's home, just as Plaintiff has done with its Cross Reference.

> [T]he Court is not convinced that there is no solution to the problem of identifying the actual infringer. … In addition, since Plaintiff is tracking a number of related copyrighted videos, Plaintiff can compile its tracking data to determine whether other copyrighted videos were downloaded under the same IP address. This may suggest that the infringer is likely a resident of the subscriber's home and not a guest.

*Ingenuity 13, LLC v. John Doe*, 12-cv-8333-ODW, CM/ECF 48 at *6-7 (emphasis added).

When a party submits a pleading to the court, the party certifies pursuant to Federal Rule of Civil Procedure 11(b)(3) that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances... the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery...." *Windy City Innovations, LLC, v. Am. Online, Inc*., 227 F.R.D. 278, 282 (N.D. Ill. 2005) citing Fed. R. Civ. P. 11(b)(3) (emphasis added). Although exhibits are not always necessary to attach to a complaint, Plaintiff has a duty under Rule 11 to certify that evidentiary support exists for its claims. An improper purpose under Rule 11(b)(1) should not be imputed to Plaintiff when it is demonstrating its evidentiary support as required by Rule 11(b)(3).

39

F.   **The Evidence Set Forth on Exhibit C May Be Admissible Under Fed. R. Evid. 404(b)**

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  "A party faces a significant obstacle in arguing that evidence should be barred because it is not relevant, given that the Supreme Court has stated that there is a 'low threshold' for establishing that evidence is relevant." *United States v. Boros*, 668 F.3d 901, 907 (7th Cir. 2012).

Even though "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character", it may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).  "[T]he rule does not preclude the use of other incidents when the issue is the likelihood that the person will engage in certain conduct in the future." § 5239 Other Crimes, Wrongs, or Acts—General Rule, 22A Fed. Prac. & Proc. Evid. § 5239 (2d ed.).

Consistent with courts throughout the country, the Seventh Circuit has held that a defendant's interest in photos, books, movies and television constitutes probative evidence other than to prove character.  In *Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001), the Seventh Circuit found that Defendant's movie and picture collection, some of which depicted violent or otherwise controversial pornography, was probative evidence because it demonstrated Defendant's obsession which led to his crime.

> The fact that Dressler maintained a collection of videos and pictures depicting intentional violence is probative of the State's claim that he had an obsession with that subject. A person obsessed with violence is more likely to commit murder, and therefore the videos and photographs are relevant. Similarly, a person who

40

> possesses photographs of homosexual acts coupled with depictions of extreme
> violence might be more inclined to commit a crime exhibiting the characteristics
> of homosexual overkill.

*Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001) (internal citations omitted) (emphasis added). Just as where a person who is obsessed with violence is more likely to commit murder, a person who uses BitTorrent every day to steal content from other intellectual property holders is more likely to steal Plaintiff's content through BitTorrent.

Other courts throughout the country have admitted evidence of defendant's hobbies and interests to demonstrate knowledge, method, plan, and lack of accident. *See, e.g., People v. Corbett*, 611 P.2d 965, 966 (Colo. 1980) (admission of defendant's knowledge in martial arts probative to show physical accomplishments); *State v. Taylor*, 2001-1638 (La. 1/14/03), 838 So. 2d 729, 746 (Defendant's interest in the movie Natural Born Killers was admissible); *State v. Hayward*, 327 Or. 397, 407, 963 P.2d 667, 674 (1998) (defendant's interest in death metal admissible to show intent).

> This circuit has developed a four-part test to determine whether evidence of prior
> acts is admissible: (1) the evidence must be directed toward establishing
> something at issue other than a party's propensity to commit the act charged; (2)
> the other act must be similar enough and close enough in time to be relevant to
> the matter at issue; (3) the evidence must be such that the jury could find that the
> act occurred and the party in question committed it; and (4) the prejudicial effect
> of the evidence must not substantially outweigh its probative value.

*Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 775-76 (7th Cir. 2001). "We do not require that there be no prejudicial effect, only that the prejudice not be unfair." *Gastineau v. Fleet Mortgage Corp.*, 137 F.3d 490, 495 (7th Cir. 1998).

In this case, Plaintiff's Cross Reference is not used as evidence to demonstrate propensity, but instead used to identify the Defendant, demonstrate that Defendant had

41

knowledge of the infringement and the absence of any mistake. Additionally Plaintiff's Cross Reference is evidence used to impeach defenses and denials. The acts on the Cross Reference took place simultaneously with the infringement of Plaintiff's movies, and often are ongoing. The infringements took place using the same IP address, enabling a jury to conclude that the acts occurred and were committed by the same person. Any prejudice Defendant might face is substantially outweighed by probative value. The ongoing and continuous nature of the infringement on the Cross Reference also shows a likelihood of future conduct by the same infringer, which is relevant because Plaintiff's requested relief includes that the Defendant be permanently enjoined from infringing Plaintiff's works.

Plaintiff's Cross Reference evidence is also admissible to establish Defendant's identity. "Since identity, like intent, is usually an ultimate issue in the case, there is no need to look beyond the inference to identity in determining the relevance of other crimes, wrongs, or acts offered under this exception." § 5246 Other Crimes, Wrongs, or Acts—Identity, 22A Fed. Prac. & Proc. Evid. § 5246 (2d ed.). Courts have found evidence relevant to prove identity in a variety of situations. *See e.g. United States v. DeLuna*, 763 F.2d 897, 916 (8th Cir. 1985) (Evidence that defendant had been in prison was admissible where the only way to identify voices on tape was through nicknames corresponding to prison log of defendant's visitors.); *United States v. Phillips*, 664 F.2d 971, 1029 (5th Cir. 1981) (Evidence that defendant had a false driver's license was admissible to prove identity); *United States v. Juarez*, 561 F.2d 65, 74 (7th Cir. 1977) (evidence of sale of heroin used to prove identity). Here, all of the different pieces of evidence on the Cross Reference either will or may be used to identify a defendant.

In *Mathias v. Accor Econ. Lodging, Inc.,* 01 C 6329, 2002 WL 1611582 (N.D. Ill. July 22, 2002), the Northern District of Illinois held a motel's long standing pattern of bug

infestations was relevant in a claim for emotional distress arising from insect infestation to show knowledge and mental state. Specifically, the court found:

> All four prongs of Rule 404(b) are met as the evidence sought to be excluded (1) establishes the defendants' knowledge of a dangerous condition and absence of mistake or accident, (2) is evidence primarily from the months immediately prior to Mathiases' arrival, (3) shows that defendants repeatedly placed invitees in infested rooms and that it shows the defendants committed the same act towards the Mathiases, and (4) the probative value is not outweighed by the danger of unfair prejudice.

*Mathias v. Accor Econ. Lodging, Inc.,* 01 C 6329, 2002 WL 1611582 (N.D. Ill. July 22, 2002).

Likewise, here, Plaintiff's Exhibit C is relevant to prove both knowledge and absence of mistake. Just like in *Mathias*, the evidence begins at the same time or immediately prior to the infringement, and shows that the infringer repeatedly downloaded content on BitTorrent. Further, it shows that Defendant committed the same act with Plaintiff's movies. This is evidence of Defendant's intent, knowledge and ability, and the probative value of much if not all of it outweighs the danger of unfair prejudice. However, if the Court finds some of the content on the cross reference causes unfair prejudice, the Court may provide a limiting instruction or omit those references.

Adjudging the admissibility of the evidence contained on Exhibit C prior to facts being developed during discovery which demonstrate the relevance of the evidence would be premature and unfair to Plaintiff. Indeed, Plaintiff's Due Process rights would be violated if it were not given the opportunity, after the close of discovery, to argue that any particular piece of evidence on Exhibit C is admissible under the test set forth in *Mathias* and other applicable law.

43

## G. This Court May Not Sanction Plaintiff Based On Pure Speculation, Particularly When that Speculation Has Been Directly Contradicted By Affidavits and Other Competent Evidence

Rule 11 sanctions cannot be sustained on mere speculation. *See Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 937 (7th Cir. 2003) ("The sanctions order thus appears to rest on nothing more solid than the judge's speculation that Reed is an extortionist. The speculation is too thin to sustain that order"); *Vollmer v. Selden*, 350 F.3d 656, 662-63 (7th Cir. 2003) ("[I]n this case Selden and Rosenthal's past objections, which have never been adjudged frivolous, cannot form the proper basis of a sanctions award."). *See also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S. Ct. 2447, 2461 (1990) ("A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.); *Soules v. Kauaians for Nukolii Campaign Comm.*, 849 F.2d 1176, 1185 (9th Cir. 1988) ("A district court cannot award Rule 11 sanctions on the basis of its speculation that a party would have filed certain papers had that party been given the opportunity.); *DeBartolo v. Health & Welfare Dep't of the Const. & Gen. Laborers' Dist. Council of Chicago & Vicinity*, 2011 WL 1131110, *12 (N.D. Ill. 2011) ("Defendant's speculation that these cases were filed for an improper purpose is insufficient to impose Rule 11 sanctions."); *Brown v. Michigan*, 2006 WL 1374042, *1 (E.D. Mich. 2006) ("Petitioner's allegations of purposeful delay are speculative and unsupported. Sanctions are therefore unwarranted."); *Robinson-Reeder v. Am. Council on Educ.*, 626 F. Supp. 2d 11, 18 (D.D.C. 2009) ("Based on the record and the parties' memoranda, sanctions are completely unwarranted in this case. The accusations made against Kearns are devoid of evidentiary support and are largely based upon plaintiff's own mischaracterizations and speculation."); *Boese v. Milwaukee Cnty.*, 801 F. Supp. 220, 227 (E.D. Wis. 1992) ("There is insufficient evidence in the record of

44

any attempt to delay, harass, or increase the costs of litigation. Similarly, although the Court did not agree with [Plaintiff] . . . it cannot say that the counsel's position was frivolous. Therefore, the defendant's motion for Rule 11 sanctions is denied."). Here, the Order to Show Cause is not based on any evidence but rather pure speculation which is false as a matter of fact.

### H.    <u>Sanctioning Plaintiff Would Chill Legitimate Advocacy</u>

"Rule 11 should be applied with some caution, given its potential for chilling legitimate advocacy." *Fleming Sales Co., Inc. v. Bailey*, 611 F. Supp. 507, 519 (N.D. Ill. 1985). "In exercising its discretion, a district court must also bear in mind that such sanctions are to be imposed sparingly, as they can 'have significant impact beyond the merits of the individual case' and can affect the reputation and creativity of counsel.'" *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003). "This Court recognized that the sanctuary given as a result of reasonable investigation 'ensures that counsel may take novel innovative positions' and that Rule 11 'does not jeopardize aggressive advocacy or legal evolution.'" *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1269 (7th Cir. 1993).

Sanctioning Plaintiff would chill legitimate advocacy by deterring Plaintiff and other copyright holders from bringing claims for copyright infringement on the Internet. Plaintiff has developed a novel, innovative and well-reasoned approach to make its cases stronger. Sanctioning Plaintiff will force copyright holders to rely on less evidence, exposing themselves to significant attorney's fees under the Copyright Act if it cannot prove the defendant committed the infringement. This could potentially allow scores of guilty defendants to avoid liability for copyright infringement. Copyright holders are attempting to compete with constant evolving technology in order to stay in business. By sanctioning Plaintiff, this Court will dissuade

45

copyright holders from embracing their own technology and evidence to fight back against the infringers who willfully steal their content.

## I. Previous Judicial Approval of Exhibit C Weighs Heavily Against a Finding that Plaintiff Filed It for An Improper Purpose

"A district court abuses its discretion in imposing Rule 11 sanctions when it bases its decision 'on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.*, 8 F.3d 441, 448 (7th Cir. 1993). "Sanctions should be reserved for those cases where it is patently clear that a claim has absolutely no chance of success and all doubts should be resolved in favor of the signing party". *Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.*, 475 F. Supp. 2d 213, 235 (E.D.N.Y. 2007). "Rule 11 does not and should not inhibit counsel from making a good faith argument under existing precedent." *Reinhardt v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am.*, 636 F. Supp. 864, 868 (E.D. Mich. 1986).

Importantly, Rule 11 sanctions should not be implemented when other district courts have permitted the conduct in question. *See Andrews v. Elec. Motor Sys., Inc.*, 767 F. Supp. 853, 856 (S.D. Ohio 1991) (Rule 11 sanctions were not applicable with respect to the attempt of third-party defendant to remove case to federal court; there was authority permitting such removal in other federal circuits). In this case, as discussed above, Judge Baylson of the Eastern District of Pennsylvania expressly approved of Plaintiff's use of its Cross Reference as an Exhibit to a Complaint. *See Malibu Media, LLC v. John Doe 1*, 2013 WL 30648 (E.D. Pa. Jan. 3, 2013). Judge Jonker of the Western District of Michigan expressly approved of Plaintiff's use of Exhibit C. *See* Exhibit C. Judge Martin of the Northern District of Indiana found that Exhibit C was not irrelevant. *Malibu Media, LLC v. John Doe,* 2:13-cv-00055-JVB-JEM, CM/ECF 22, at p. 8 (N.D. Ind. Aug. 16, 2013). Judge Wright, of the Central District of California opined that

46

*without* an Exhibit like Plaintiff's cross reference, Plaintiff may violate Rule 11(b)(3). Plaintiff should not be sanctioned for conduct that has been approved by other Federal Courts when there is no contrary Circuit Court precedent. Indeed, not one court in the Seventh Circuit, nor anywhere in the country, has found Plaintiff's Exhibit C to be improper.

### J. The Court Has the Option to Sua Sponte Strike Offensive Cross Reference Hits Under Fed. R. Civ. P. 12(f)

Rule 11 sanctions are particularly inappropriate because Plaintiff has a valid claim, was acting in good faith, and this Court may strike scandalous matter from Exhibit C *sua sponte*. "The Court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party[.]" Fed. R. Civ. P. 12(f). Exhibit C is a part of Plaintiff's complaints, and, because it is part of a pleading, the Court may properly strike scandalous matter from the exhibits under Rule 12(f). *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). "Allegations may be stricken as scandalous if the matter bears no possible relation to the controversy or may cause the objecting party prejudice. The decision whether to strike material as scandalous is within the discretion of the district court." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992) (citations omitted).

If Plaintiff attempted to edit Exhibit C it would inevitably be subjected to harsh scrutiny from both judges and defendants. An onslaught of criticism would surely follow any such decision suggesting that this or that file should have also been deleted. Judicial conduct under Rule 12(f) will not invoke such criticism. Moreover, leaving Exhibit C unaltered presents the Court with an unadulterated list of infringements traced to a particular IP address. The exhibit speaks for itself without being filtered through Plaintiff's lens.

## V.    <u>CONCLUSION</u>

As set forth above, Plaintiff has a proper purpose for attaching Exhibit C.  Accordingly, this Court should not sanction Plaintiff under Fed. R. Civ. P. 11.

Dated:  October 4, 2013

Respectfully submitted,

SCHULZ LAW, P.C.

By:     /s/ *Mary K. Schulz*
       Mary K. Schulz, Esq.
       1144 E. State Street, Suite A260
       Geneva, Il 60134
       Tel:   (224) 535-9510
       Fax:  (224) 535-9501
       Email:  schulzlaw@me.com
       *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 4, 2013, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

By:     /s/ *Mary K. Schulz*