```
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF MICHIGAN
                          SOUTHERN DIVISION

 _____

 MALIBU MEDIA, LLC,

                 Plaintiff,
                                          DOCKET NO. 1:13-cv-357
 vs.


 MARC WILSON,

                 Defendant.
 _____/


       TRANSCRIPT OF RULE 16 SCHEDULING CONFERENCE

          BEFORE THE HONORABLE ROBERT J. JONKER

              UNITED STATES DISTRICT JUDGE

                  GRAND RAPIDS, MICHIGAN

                   September 18, 2013


 Court Reporter:         Glenda Trexler
                         Official Court Reporter
                         United States District Court
                         685 Federal Building
                         110 Michigan Street, N.W.
                         Grand Rapids, Michigan 49503


 Proceedings reported by stenotype, transcript produced by

 computer-aided transcription.
```

**EXHIBIT C**

```
 1   A P P E A R A N C E S:

 2   FOR THE PLAINTIFF:

 3       MR. PAUL J. NICOLETTI
         NICOLETTI AND ASSOCIATES
 4       36880 Woodward Avenue, Suite 100
         Bloomfield Hills, Michigan 48304
 5       Phone:  (248) 203-7800
         Email:  Pauljnicoletti@gmail.com
 6
     FOR THE DEFENDANT:
 7
         MR. JEFFREY ANTONELLI
 8       ANTONELLI LAW, LTD.
         100 North LaSalle Street, Suite 2400
 9       Chicago, Illinois 60602
         Phone:  (312) 201-8310
10       Email:  Jeffrey@antonelli-law.com

11                         *   *   *   *   *

12                                    Grand Rapids, Michigan

13                                    September 18, 2013

14                                    3:39 p.m.

15                    P R O C E E D I N G S

16           *THE COURT:*  All right.  We're here on Malibu Media

17   against Marc Wilson, 1:13-cv-357.  We have a Rule 16 with

18   at least one motion pending.

19           Let's start with appearances, please.

20           *MR. NICOLETTI:*  On behalf of the plaintiff,

21   Your Honor, Paul Nicoletti.

22           *THE COURT:*  All right.

23           *MR. ANTONELLI:*  Jeffrey Antonelli on behalf of

24   defendant Marc Wilson.

25           *THE COURT:*  Thanks.  Please be seated.  We can often
```

1    do these types of Rule 16's by phone, and I know both of you
2    had to come from out of town, but when we do have pending
3    motions, I do do them on the record.  And also when there are
4    some things in the joint status report that would vary in some
5    ways from our regular policies, I have the parties in.  So
6    that's why you're here.
7            Also, I didn't see, because the defendant didn't
8    answer, they filed a Motion to Strike and treated that as
9    suspending the answer, and at least I didn't see a defendant's
10   statement of the case in the joint status report, I also wanted
11   to get a better picture of how the defendant expects the case
12   to unfold.  So I'll start with that and just get a sense of the
13   anticipated defense before we focus in on the motion to strike.
14   Because the motion to strike was just two exhibits, right, not
15   to the overall claim?
16           *MR. ANTONELLI:*  That's correct, Your Honor.
17           *THE COURT:*  Okay.  So give me just sort of a preview
18   of what to expect.  Unless I missed it, I didn't see a
19   statement of the case from the defendant.
20           *MR. ANTONELLI:*  No, I don't believe we prepared one
21   for plaintiff's counsel.
22           *THE COURT:*  Okay.
23           *MR. ANTONELLI:*  Well, essentially Mr. Wilson's
24   position is not a technical one, but basically that he simply
25   didn't do it.  There are a number of alleged hits, as I think

1  they describe it in the Complaint, of IP addresses dating back
2  I think as far as a year. My client doesn't believe that those
3  are substantiated by any records that have been yet produced by
4  the ISB because Internet protocol addresses change so
5  frequently. But we have not entertained a motion to dismiss as
6  of yet because we've filed a motion to strike.
7        *THE COURT:* Okay. But basically your anticipated
8  defense is it isn't me, wrong guy?
9        *MR. ANTONELLI:* That's correct.
10       *THE COURT:* Okay. And maybe you don't know enough
11 yet to state one way or the other, but do you expect it to
12 be -- I mean, it can take various forms, I guess. You know,
13 the idea that he was in a multi apartment unit or something and
14 his predecessor was there, or maybe it was my IP address but
15 somebody else was using it, or somebody was using it with or
16 without authority. Do you have a sense of where you're going
17 on that road, or is it too early to tell?
18       *MR. ANTONELLI:* My client is an engineer, and he is
19 very familiar with computer information systems, and he has
20 installed a special software, it's called a network sniffer,
21 that has shown that there are devices that have been using his
22 signal without his permission, therefore, we believe it may be
23 one of the neighbors.
24       *THE COURT:* Okay. All right. Do you want to respond
25 at this point, Mr. Nicoletti? I know we're not here to try the

1  case, but we are here to educate if we can.
2              *MR. NICOLETTI:* Your Honor, I think you've had these
3  cases before, and in this situation it's usually the "I didn't
4  do it" defense.  We are prepared to produce documents relating
5  to the Internet service activity at this IP location, and based
6  on the activity that is indicated in our cross-reference, it's
7  pretty clear, when taken in combination with the Facebook
8  profiles, the Twitter profiles, the other public media
9  profiles, that the files that have been downloaded do match up
10 and are strikingly similar to what the interests of Mr. Wilson
11 have been publicly stated to be.  So I guess at this juncture
12 that's as deep as I will get into it.
13             They are pointing the finger at the next-door
14 neighbor, and we have reasons to believe it was not the
15 next-door neighbor or neighbors that committed this
16 infringement because it occurred over too long of a period of
17 time and the files downloaded are too similar to what
18 Mr. Wilson's interests are.
19             *THE COURT:* Okay.  All right.  Thank you.
20             Anything else at this point in terms of fleshing out
21 the case?
22             *MR. ANTONELLI:* No, Your Honor.
23             *THE COURT:* No?
24             *MR. ANTONELLI:* No.
25             *THE COURT:* Well, there is a motion to strike.  I

1  take it that's the reason we don't have a defense answer,
2  right?
3          *MR. ANTONELLI:* That's correct.
4          *THE COURT:* Okay. And I know practices in that vary
5  from jurisdiction to jurisdiction. At least my practice would
6  have always been and is that a motion to strike doesn't suspend
7  the answer obligation, at least with respect to anything that's
8  not attacked. So here if we're just attacking two of the
9  attachments, I would still expect to see an answer to the other
10 things that are pleaded. And I do know that varies a lot. And
11 different districts, even I think the Eastern District,
12 actually judges within the district have different views on
13 that, so nobody defaulted you or took action to do that, and
14 that wouldn't be appropriate when you're defending it, but I
15 would in the future, if you get more of these cases, you know,
16 or you're just around the lakeshore so you may come again, that
17 would be my practice anyway to expect an answer unless you're
18 challenging the whole of the pleading.
19         *MR. ANTONELLI:* Understood.
20         *THE COURT:* Okay? So go ahead. Anybody want to
21 amplify what's on the record regarding the motion to strike?
22 I've read the motion and the response, and if either party
23 wants to amplify that now, I'll give you a chance. It's your
24 motion.
25         *MR. ANTONELLI:* No, Your Honor.

```
 1              THE COURT:  Okay.
 2              MR. ANTONELLI:  But with regard to the answer, I'd
 3    like leave to file my answer within 7 days.
 4              THE COURT:  Of course you'll get a chance to answer,
 5    sure.  We'll talk about that in a minute.
 6              Anything else, Mr. Nicoletti?
 7              MR. NICOLETTI:  Your Honor, it's all in my pleadings.
 8              THE COURT:  The motion was under 12(f) to strike two
 9    of the exhibits, I think it was Exhibit C and D to the Amended
10    Complaint, which laid out in the case of Exhibit C downloads
11    that the plaintiff is alleging on works that weren't
12    copyrighted to the plaintiff but that the plaintiff believes
13    reflect other BitTorrent usage and may be a part of 404(b) type
14    of evidence later.  And then D was essentially a questionnaire
15    to the defendant saying, you know, here is an opportunity, if
16    you don't think you're the one, to show us why and what you
17    think somebody else -- or who the other people might be.  So it
18    would be kind of in the nature of informal interrogatories.
19    And I'm going to deny the motion to strike.  I think that that
20    should be reserved under 12(f) for things that are genuinely
21    completely impertinent to the case, things that are really only
22    amenable to one interpretation, namely, the idea that somebody
23    wants in a public document to slander or otherwise drag
24    somebody's name through the mud.  And although I understand the
25    defense position that that's what's happening here, the truth
```

1  is the copyrighted works themselves have names that are
2  suggestive, and that would be under even the most narrow
3  reading of the pertinent allegations within the scope of a
4  proper allegation.  And the lengthier one has some that are of
5  the same character but a lot of others that aren't, that are
6  just television shows, and in some sense would be less
7  objectionable or problematic.
8         But more to the point, all of that stuff is, I think,
9  potentially germane to what's going on, especially when we're
10 trying to find out is it this person whose name is associated
11 in at least one place with the IP address or is it somebody
12 else who is misusing the IP address?  And 404(b) does
13 anticipate evidentiary use of some of these other things.  The
14 plaintiff certainly doesn't have an obligation to plead
15 everything, but it doesn't necessarily have a prohibition
16 either.  Rule 8 is a minimum standard, not a standard that
17 precludes other useful information.
18        So the D exhibit is a little different, but I just
19 don't see any harm to that.  Nobody has to answer it.  All the
20 defendant has to do is say, "I agree it's attached.  I'm not
21 going to answer it."  And beyond that it's really just a form
22 in a way of communicating early in the case what the interest
23 of the plaintiff is in getting other information, and it's all
24 the kind of stuff you could get in an interrogatory anyway.  So
25 we'll go ahead and enter an Order denying that.  14 days is

```
 1   fine, what you would normally have to go ahead and answer.  And
 2   I don't think the parties anticipate any other changes to the
 3   pleadings.  I know you have a later date, but does either party
 4   anticipate a change?
 5            MR. NICOLETTI:  No, Your Honor.
 6            THE COURT:  Okay.  So I'm just going to say other
 7   than that answer which we'll get, do it by motion if you need
 8   to change parties or pleadings.
 9            In terms of the discovery, that's the other thing,
10   you know, especially in a case like this, it wouldn't typically
11   go all the way out to July.  I would be looking more at the end
12   of March.  Is there something the parties expect to be
13   especially difficult or cumbersome in the discovery here?
14            MR. NICOLETTI:  No, Your Honor.
15            MR. ANTONELLI:  Your Honor, I'll acknowledge that
16   Mr. Nicoletti in other cases has had I think some extenuating
17   circumstances with their expert basically coming from Germany
18   and that's one of the possible factors.  I think this is going
19   to come down to a battle of the experts in the end, Your Honor,
20   because of the nature of the forensic computer examinations.
21            MR. NICOLETTI:  Judge, let me just indicate that in
22   the IPP Limited case they are a fact witness and they are not
23   going to be an expert witness.  The expert witness is -- I
24   think he's out of -- he's throughout the East Coast.  I can't
25   think of the name of the state.  But he is local.  But there
```

```
 1    shouldn't be any time delay with that.
 2              THE COURT:  All right.  So does anybody really need
 3    to July 1, or can you get it all done by March 31?
 4              MR. NICOLETTI:  I think that's fine.
 5              MR. ANTONELLI:  I would say, Your Honor, that there
 6    have been so few of these cases in the country that have come
 7    anywhere near completion, it's difficult to tell ahead of time.
 8              I do have a background in representing computer
 9    companies, and I'm aware of the types of issues that can come
10    up, and we just don't know how many of those will occur in this
11    case.
12              THE COURT:  All right.
13              MR. ANTONELLI:  I want to be able to foreshadow the
14    length of time that may be possible in this case.
15              THE COURT:  Right.  Well, I think the six-month
16    period plus a couple weeks, from what I know now anyway, would
17    seem to be enough.  Certainly this, like most other civil
18    cases, doesn't resolve until you run into a deadline anyway.
19    So giving you more time usually just means you resolve it later
20    rather than earlier.  If something does come up that the
21    parties need more time on, you can certainly let me know, and
22    as long as everybody has been diligent along the way, I'll
23    certainly make reasonable adjustments.  So I'll give you a
24    March 31 cutoff with a motion cutoff of April 30.  And then
25    working back for experts, plaintiff disclose your expert by
```

1   December 31 with reports by January 31, and then the defense
2   can disclose their expert by January 31 with reports by
3   February 28.  And then you have that last 30 days for just
4   expert deps.  And do initial (a)(1) disclosures let's say by --
5   you're proposing September 25, which is fine with me.
6           I had a question, before we get to ADR, in terms of
7   the trial length.  There's a reference to, you know, what the
8   plaintiff wants, a day and a half, and the defense a day and a
9   half, and then a day for other parties.  I have no idea what
10  that means.  How are we going to have other parties at the
11  trial?  Do you see what I'm looking at?
12          *MR. NICOLETTI:*  Your Honor, I think a day and a half
13  should be sufficient.
14          *THE COURT:*  Nobody is expecting other parties here,
15  right?
16          *MR. NICOLETTI:*  No, I'm not.
17          *MR. ANTONELLI:*  We're unsure at this time,
18  Your Honor.
19          *THE COURT:*  You're thinking you might third party
20  somebody in?
21          *MR. ANTONELLI:*  Yes.
22          *THE COURT:*  I see.  Okay.  Well, if you do that,
23  we'll deal with it.
24          Who are you thinking of?
25          *MR. ANTONELLI:*  The neighbor.

```
 1              THE COURT:  I see.  So the person that you think did
 2   it?
 3              MR. ANTONELLI:  Yes.
 4              THE COURT:  Okay.  Now, in terms of the ADR, the last
 5   thing on my list anyway, nobody wants it at this point, which
 6   is fine, but you have to do something at some point.  And if
 7   you don't agree to facilitation, which is sort of our default
 8   ADR process in civil cases when the parties agree, I'm going to
 9   give you case evaluation, which is something we'll do at the
10   end of discovery.  So that's what I'm going to do.  I'll give
11   you case evaluation at the end of discovery.  If the parties
12   think otherwise along the way and you want to mediate instead,
13   you can let me know by stipulation.  But at least we'll have
14   something in the case management order.  And then we'll give
15   you a regular trial schedule with a magistrate judge settlement
16   conference, the final pretrial conference, and the trial date.
17              I think that's it for me.  Do you have anything else,
18   Mr. Nicoletti?
19              MR. NICOLETTI:  I have nothing, Your Honor.
20              THE COURT:  Mr. Antonelli?
21              MR. ANTONELLI:  No, Your Honor.
22              THE COURT:  Thank you all.
23              MR. NICOLETTI:  Thank you.
24              THE CLERK:  All rise, please.  Court is in recess.
25         (Proceeding concluded at 3:53 p.m.)
```

```
 1                       *   *   *   *   *
 2            I certify that the foregoing is a correct transcript
 3    from the record of proceedings in the above-entitled matter.
 4
 5    Date:   September 30, 2013
 6
 7                                 /s/ Glenda Trexler
                                   _____
 8                                 Glenda Trexler, CSR-1436, RPR, CRR
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```