## DECLARATION OF COLETTE FIELD

### I, COLETTE FIELD, HEREBY DECLARE:

1.      I am over the age of 18 and am otherwise competent to make this declaration.

2.      This declaration is based upon my personal knowledge.

3.      I founded Malibu Media with my husband Brigham Field.

4.      Brigham and I recognized that there was an unfulfilled niche in the adult entertainment industry; viz., sophisticated erotica which is appealing to men, women and couples.

5.      We worked long hours and invested substantially all of our disposable income into our business for *years* before it finally became profitable.

6.      Malibu Media makes money by distributing its product through a subscription based website, www.x-art.com.

7.      It currently has approximately 50,000 subscribers.

8.      Malibu Media spends over two million dollars a year producing content. And, millions more each year in ancillary costs associated with running its business.

9.      Since Malibu Media has real costs, it cannot compete against free copies of its works.

10.     On June 10, 2013, Malibu Media became the first plaintiff to ever try a BitTorrent copyright infringement case.

11.     The "Bellwether" trial was presided over by the Honorable Judge Baylson, United

1

**EXHIBIT E**

States District Court Judge in and for the Eastern District of Pennsylvania.

12.     The Bellwether case ended with final judgments on liability in favor of Malibu Media against all three defendants who were tried.  And, a final judgment on damages was entered in an amount of $112,500 plus attorneys' fees and costs against Bryan White.

13.     Approximately 80,000 people in the United States use BitTorrent to steal Malibu Media's movies each month.

14.     Based on the number of infringements being committed each month, Malibu Media knows more people are watching its movies in 2013 than were watching its movies in previous years.  Nevertheless, Malibu Media's subscriber base has not grown because of the theft.

15.     In early 2012, after watching our movies be stolen by unknown thousands each month, Malibu Media engaged Lipscomb, Eisenberg and Baker, PL ("LEB"), an AV Rated law firm in Miami, Florida, to coordinate the filing of lawsuits across the country.

16.     Malibu Media has two goals: (a) deter infringement and (b) obtain compensation for the theft of its movies.

17.     Regarding deterrence, in addition to the lawsuits, Malibu Media sends 1000s of notices each month under the Digital Millennium Copyright Act ("DMCA Notices") to websites and search engines.  These notices are intended to cause the websites and search engines to remove Malibu Media's content (or the link to it) from their websites. [1]

18.     In early 2012, Malibu Media began filing comparatively small (usually 10-50 Doe Defendants) same swarm joined lawsuits with proper personal jurisdiction in courts across the country.  The form of the pleadings and motions in these suits were initially drafted by LEB's

---

[1] Footnote omitted as Confidential.

2

attorneys.

19.    We then retained other counsel across the country, whose job it is to serve as lead counsel in those jurisdictions where they were admitted and practice.

20.    During the first six months of 2012, we sued over two thousand John Doe Defendants through same swarm joined lawsuits. During that same six month period hundreds of thousands of people stole our movies.

21.    In the aggregate, every year, BitTorrent infringement causes millions of dollars of damages to Malibu Media. With this as the background, the decision to act made sense for us.

22.    Malibu Media retains the power to manage all of its litigation and is actively involved in overseeing the litigation.

23.    Malibu Media instructed its counsel to allow defendants to proceed anonymously.

24.    Malibu Media instructed its counsel to exercise caution during settlement negotiations and not to use the adult nature of its works as leverage.

25.    The intended purposes of Exhibit C were accurately described in the Response to the Show Cause order.

26.    Exhibit C is not attached to complaints for the purpose of harassing defendants.


**FURTHER DECLARANT SAYETH NAUGHT.**

3

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of June, 2013.

COLETTE FIELD

By: _____

# DECLARATION OF M. KEITH LIPSCOMB, ESQ.

**I, M. KEITH LIPSCOMB, HEREBY DECLARE:**

1.      I am over the age of 18 and am otherwise competent to make this declaration.

2.      This declaration is based upon my personal knowledge.

3.      In response to Malibu Media's and third parties' BitTorrent copyright infringement lawsuits, a group of approximately twenty attorneys (the "Regulars") began focusing on defending these cases.

4.      All of the Regulars, as well as many of the other defense lawyers and *pro se* litigants communicate with each other through online blogs.

5.      These blogs are administered by bitter former defendants sued by third party plaintiffs for BitTorrent copyright infringement. The bloggers read and analyze virtually every paper filed in a suit brought by Malibu Media.

6.      Undersigned has been told by one of the Regulars that they have a private Listserve so that they may discuss legal strategies and exchange template pleadings and motions.

7.      The Regulars, defense counsel generally, and *pro se* litigants routinely assert disingenuous and often perjurious defenses.

8.      The five most common defenses are: (1) the infringement was not committed by either me or anyone else in my house; (2) the infringement was not committed by me but instead by someone else in my house; (3) a third party used my unsecure WiFi router; (4) my password protected WiFi router was hacked by an unknown third party; and, (5) the complaint does not state a plausible cause of action because an IP Address is not a person.

9.      In June 2012, in order to overcome the most common defenses, I began working with IPP, Ltd., who performs the pre-suit investigation for Malibu Media, on developing better

1

evidence against the infringers.

10.     Specifically, I asked IPP, Ltd. to expand the universe of .torrent files it scans so that Malibu Media could disprove or corroborate a defendant's defense. Additionally, I wanted expanded surveillance of the BitTorrent activity associated with an IP Address so that Malibu Media could better argue that its cases are plausible under Fed. R. Civ. P. 12(b)(6).

11.     Beginning on July 16, 2012, IPP, Ltd. greatly expanded the number of .torrent files it was scanning. Currently, IPP, Ltd. is scanning approximately ten million (10,000,000) .torrent files each day. *See* Exhibit A, testimony of Michael Patzer.

12.     We refer to the evidence of third party infringements as the "Cross Reference Tool."

13.     Since developing the Cross Reference Tool, the first thing that I and Malibu Media's other counsel are trained to do after a Defendant raises one of the most common defenses is go to the Cross Reference Tool and then perform additional research about the defendant.

14.     Specifically, I and Malibu Media's other counsel are trained to review the defendant's social media webpages, e.g. Facebook, LinkedIn and Twitter.

15.     We are also trained to review any other online biographies which can be found, such as those listed on an employer's or social group's webpage. Additionally, we are trained to look at Goggle Earth to ascertain where the defendant lives, the type of dwelling, and the defendant's proximity to third parties.

16.     By comparing all of the publicly available information about a defendant with what is contained on the Cross Reference Tool, I am often able to confirm that the defendant is the actual infringer.

2

17.  Alternatively, I learn that the infringer is some other identifiable person in the subscriber's home.

18.  In short, the Cross Reference Tool is habitually used as a first resource.

19.  Omitted as confidential.

20.  Omitted as confidential.

21.  Omitted as confidential.

22.  Omitted as confidential.

23.  Omitted as confidential.

24.  Omitted as confidential.

25.  I am constantly striving to improve the strength of Malibu Media's cases.

26.  With that in mind, at the beginning in 2013, Malibu Media ceased suing people in joined suits and began to only sue defendants individually. By so doing, Malibu Media was able to focus exclusively on people whom we describe as "persistent on-line infringers."

27.  I created the form of the individual defendant complaint.

28.  Exhibit C to a complaint includes everything that is in the Cross Reference Tool at the time the complaint is created.

29.  The purpose of Exhibit C is not now nor has it ever been to use it to embarrass defendants into settling.

30.  The purpose of Exhibit C is to make Malibu Media's case stronger.

31.  Exhibit C does make Malibu Media's case stronger. Indeed, Exhibit C better enables Plaintiff to identify the infringer and overcome common defenses.

32.  Exhibit C is analogous to a thousand crumbs of bread all of which lead directly to the infringer. This is important because BitTorrent copyright infringement litigation is basically

3

a whodunit.

33.     Malibu Media sues the subscriber of the internet which was used to infringe.    It alleges in good faith that the subscriber is the infringer.  This allegation is not only plausible but most often true.

34.     However, in some instances, someone living in the subscriber's home is the infringer.

35.     Usually (although not always) the defendant will initially deny committing the infringement.

36.     The information on Exhibit C is intended to enable Malibu Media to identify the actual infringer.

37.     In short, the electronic evidence associated with defendants' connections to all or some of the content on Exhibit C paints a picture of a person.   This picture often includes information about the infringers' hobbies, favorite movies and music, games, characters in games, computer software, computer hardware, academic interests, house renovation plans, favorite cities, sports teams, etc.

38.     I believe that the infringer is almost always – meaning ninety-nine plus percent of the time – a resident (or *de facto* resident) of the subscriber's home.  As previously stated, the infringer is usually the subscriber.  However, if the Doe Defendant is an innocent subscriber then he or she will know the infringer well.

39.     Exhibit C is attached to complaints for the purpose of allowing an innocent subscriber review it and identify the infringer.

40.     Malibu media intends for an innocent subscriber to use the Exculpatory Evidence Request Form and Exhibit C to identify the actual infringer; and, thereafter, tell Plaintiff the

4

identity of the infringer – all prior to serving any party.

41.     The information on Exhibit C is intended to assist Malibu Media in proving that a defendant is a BitTorrent user.

42.     To explain, many defendants deny under oath that they have ever used BitTorrent. Whether a defendant has ever used BitTorrent is relevant to whether the defendant used BitTorrent to download and distribute Malibu Media's movies.

43.     Malibu Media is able to prove many defendants' denials are incredible by establishing a connection between the content on Exhibit C and those defendants.

44.     The information on Exhibit C is intended to prove that the infringer resides in the subscriber's house.

45.     By establishing that the infringement occurred consistently over a long period of time, Malibu Media is more easily able to disprove a defendant's assertion that a guest or other non-resident committed the infringement.

46.     The further one is away from a wireless router the slower the internet connection. Repetitive hits in rapid succession evince close proximity to the router.

47.     A long history of infringement makes it much less probable that someone was "camping out" near a defendant's house for the purpose of illegally downloading pornographic movies through BitTorrent.  As strange as that defense sounds, it is repeatedly raised against Malibu Media in these cases.

48.     Exhibit C is intended to prove that a defendant had knowledge of the infringement.

49.     To explain, some of the copyright owners of the works contained on an Exhibit C

5

may have sent defendant a DMCA notice.[1] If the defendant has received a DMCA notice then said defendant cannot credibly deny that he or she was unaware that his or her internet was being used for infringing purposes.

50.     Additionally, BitTorrent is a bandwidth hog.[2] And, heavy BitTorrent users often exceed their internet service provider's maximum allowable bandwidth use policy.

51.     Many internet service providers warn heavy BitTorrent users about exceeding the provider's bandwidth use policy and advise the subscriber to secure his or her WiFi router. These warnings are associated with the BitTorrent use pled on Exhibit C.

52.     Finally, the internet speed of many wireless routers decreases with use.

53.     If one's internet speed is incredibly slow it may be a sign of heavy BitTorrent use.

54.     Malibu Media intends for Exhibit C to assist it in arguing that its claims are plausible under Rule 12(b)(6).

55.     While Malibu Media has never had a case dismissed pursuant to Fed.R.Civ.P. 12(b)(6), many Doe Defendants file motions arguing that it is not plausible for Plaintiff to identify the infringer from an IP Address. Exhibit C contains a plethora of information about the defendant beyond their merely having downloaded Malibu Media's movies.

**FURTHER DECLARANT SAYETH NAUGHT.**

---

[1] The Movie Picture Association of America and the Recording Industry Association of America have recently started a program called "Six Strikes." Participation in it is limited to members of those trade associations. The trade associations are sending DMCA notices to BitTorrent users. Each step of the Six Strike process escalates in intensity by the ISP. Malibu Media attempts to find Defendants that are likely to have received DMCA notices from these entities.

[2] See http://torrentfreak.com/bittorrent-accounts-for-35-of-all-upload-traffic-vpns-are-booming-130518/ estimating that 35% of all upload internet traffic is through BitTorrent. *See also*, http://en.wikipedia.org/wiki/Bit_torrent_search_engine#Decentralized_keyword_search estimating that 35% of all internet traffic is consumed by people using BitTorrent.

6

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746,** I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of June, 2013.

**M. KEITH LIPSCOMB**

By: _____

## DECLARATION OF MARY K. SCHULZ

**I, MARY K. SCHULZ, DO HEREBY DECLARE:**

1.     I am over the age of eighteen (18) and otherwise competent to make this declaration. The facts stated in this declaration are based upon my personal knowledge.

2.     I am counsel to Malibu Media in Illinois and Wisconsin and have personally acted as lead counsel for dozens of Malibu Media's copyright infringement lawsuits.

3.     At the time I was retained, the majority of judges were holding that same swarm joined cases were not only permitted under Fed. R. Civ. P. 20, but were also proper under Fed. R. Civ. P. 1 and 20.

4.     I have never considered using the Cross Reference ("Exhibit C") to embarrass a defendant or force him to settle.

5.     Further, I have never used the additional pornographic movies on Exhibit C to assert improper leverage to coerce a settlement.

6.     In my conversations with Malibu Media and other counsel, we never considered using Exhibit C to embarrass a defendant.

7.     It had never crossed my mind, period. Indeed, I'm already representing a client that is suing for the infringement of copyrights covering erotic adult movies. Regardless, embarrassing defendant into settling is *not* the purpose of Exhibit C.

8.     Malibu Media's policy is to not contact the defendant sued in an individual suit for purposes of settlement prior to serving them with the Complaint. I have adhered to that policy.

1

9.      I have been advised to always grant a defendant's request in an individual suit to proceed anonymously and have done so on numerous occasions.

10.     I have found Exhibit C to be a very useful tool in my cases. Although I have used it many times, one recent occasion comes to mind where it was very helpful.

11.

12.

13.

14.

**FURTHER DECLARANT SAYETH NAUGHT.**

**DECLARATION**

PURSUANT TO 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of June, 2013.

MARY K. SCHULZ

_mary K. Schulz_

2

## DECLARATION OF EMILIE KENNEDY

**I, EMILIE KENNEDY, DO HEREBY DECLARE:**

1.      I am over the age of eighteen (18) and otherwise competent to make this declaration. The facts stated in this declaration are based upon my personal knowledge.

2.      I am an attorney licensed to practice in Florida.

3.      I am an associate with the law offices of Lipscomb, Eisenberg, and Baker, PL.

4.      I am counsel to Malibu Media in Florida and have personally worked on dozens of Malibu Media's copyright infringement lawsuits.

5.      From the universe of potential defendants, each month in 2013, counsel for Plaintiff has chosen between 100-200 defendants to sue.

6.      The goal is to pick the worst of the worst infringers, and those defendants against whom Plaintiff can win a case.

7.      Accordingly, a computer script is run to cull down the universe by using two criteria: (a) duration of infringement and (b) the number of Malibu Media's movies that are infringed. Significantly, there is not a content filter, much less one that seeks to locate embarrassing content.

8.      Once the universe has been narrowed an attorney reviews the potential defendants' Cross Reference hits.

9.      The goal is to find the cases which have the best evidence on them that will aid Plaintiff in identifying a specific person. That is the primary purpose of the culling process during suit creation.

10.     People are *not* intentionally chosen because of any particular offensive material on the Cross Reference.

1

11.     None of Malibu Media's attorneys have ever been instructed by Malibu Media to intentionally choose particularly offensive material to be included on Exhibit C.

12.     None of Malibu Media's attorneys have ever discussed between or among themselves that Exhibit C should contain offensive material.

13.     In short, this is not a purpose either Malibu Media or its counsel has *ever* considered.

14.     I have never considered using Exhibit C to improperly embarrass a defendant or force him to settle.

15.     I have been advised to always grant a defendant's request to proceed anonymously and have done so on numerous occasions.

16.     I have found Exhibit C to be a very useful tool in my cases. Although I have used it many times, two recent occasions come to mind where it was very helpful.

17.

18.

19.

20.

(a)

(b)

(c)

2

(d)

(e)

(f)

(g)

(h)

(i)

(j)

21.

22.

23.

24.

25.

26.

27.

3

28.

29.

30.

31.

32.

33.     Additionally, on June 12, 2013, I attended a hearing on behalf of Malibu Media,
LLC for a BitTorrent copyright infringement case filed in the Southern District of Florida. The
hearing concerned Malibu Media's Motion for Leave to Take Expedited Discovery.

34.     In that hearing before the Honorable Judge McAliley, co-counsel and I were
extensively examined by the judge on numerous issues.

35.     At that time, I was required to explain the contents of Exhibit C to the complaint
and its significance.

36.     We explained to the judge that Exhibit C can be used to help identify the infringer.
Significantly, in that case Exhibit C contained a downloaded copy of "Kaplan Schweser CFA
2013 Level 1," which is an e-book that is used to prepare for the CFA exam. We thus indicated
that it was likely that the defendant was studying to become a CFA.

4

37.     We also explained that the numerous mainstream movies and television shows contained on Exhibit C indicated a high likelihood that the ISP had sent the defendant DMCA notices and excessive bandwidth usage notices.

38.     Besides expressing concern over the potential for embarrassment to the defendant and asking us whether we would oppose procedural safeguards to prevent any such embarrassment (which we did not), at no point did the judge indicate any concern whatsoever about the filing of Exhibit C with Plaintiff's complaint.

39.     After an hour of questioning, the judge granted our motion, stated that she was impressed with our presentation, and informed us that we had convinced her to think differently about the case.

**FURTHER DECLARANT SAYETH NAUGHT.**

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746,** I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of June, 2013.

**EMILIE KENNEDY**

By:_____

5

## DECLARATION OF JASON COOPER, ESQ.

**I, JASON COOPER, HEREBY DECLARE:**

1.      I am over the age of 18 and am otherwise competent to make this declaration.

2.      This declaration is based upon my personal knowledge.

3.      I am an attorney licensed to practice in Florida.

4.      I am an associate with the law offices of Lipscomb, Eisenberg & Baker, PL.

5.      I am counsel to Malibu Media in Florida and have personally worked on dozens of Malibu Media's copyright infringement lawsuits.

6.      On June 19, 2013, I attended a hearing on behalf of Malibu Media, LLC for a BitTorrent copyright infringement case filed in the Southern District of Florida.  The hearing concerned Malibu Media's Motion for Leave to Take Expedited Discovery.

7.      In that hearing before the Honorable Judge Goodman, co-counsel and I were extensively examined by the judge on numerous issues.  Significantly, Judge Goodman wanted clarification as to the purpose of Exhibit C.

8.      We explained to the judge that Exhibit C contained a list of works that were not owned by Plaintiff but which demonstrated that the Defendant was a habitual BitTorrent thief. We also explained that the numerous mainstream movies and television shows contained on Exhibit C indicated a high likelihood that the ISP had sent the defendant DMCA notices and excessive bandwidth usage notices.

9.      The judge scrutinized the list and even read aloud the titles of many of the works contained on Exhibit C.

10.     Besides expressing concern over the potential for embarrassment to the defendant and asking us whether we would oppose procedural safeguards to prevent any such

1

embarrassment (which we did not), at no point did the judge indicate any concern whatsoever about the filing of Exhibit C with Plaintiff's complaint.

11.    Our Motion was granted orally at the hearing with a written order following shortly thereafter.

**FURTHER DECLARANT SAYETH NAUGHT.**

<u>**DECLARATION**</u>

**PURSUANT TO 28 U.S.C. § 1746,** I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of June, 2013.

**JASON COOPER**

By: _Jason Cooper_

2

## DECLARATION OF PAUL NICOLETTI

**I, PAUL NICOLETTI, DO HEREBY DECLARE:**

1. I am over the age of eighteen (18) and otherwise competent to make this declaration.

2. The facts stated in this declaration are based upon my personal knowledge.

3. I am counsel to Malibu Media in Michigan and Indiana and have personally acted as lead counsel for dozens of Malibu Media's copyright infringement lawsuits.

4. I have never considered using the Cross Reference ("Exhibit C") to improperly embarrass a defendant or force him/her to settle.

5. In my conversations with Malibu Media and other counsel, we never considered using Exhibit C to improperly embarrass a defendant.

6. Malibu Media's policy is to not contact the defendant sued in an individual suit for purposes of settlement prior to serving them with the complaint. I have adhered to that policy.

7. I have been advised to always grant a defendant's request in an individual suit to proceed anonymously and have done so on numerous occasions.

8. I have found Exhibit C to be a very useful tool in my cases. Although I have used it many times, four recent occasions come to mind where it was very helpful.

9. The first example is in a case where a defendant filed a motion for Malibu Media to post a bond for attorney's fees. This defendant claimed he is likely to be the prevailing party and signed a declaration under oath claiming he never used BitTorrent and never downloaded Plaintiff's movies.

1

10.     After receiving the defendant's name, prior to serving him with the complaint, my staff researched his background.

11.     The defendant had a public LinkedIn profile listing his resume.

12.     On this LinkedIn profile the defendant stated he was an expert in the software "SolarWinds."

13.     On the defendant's Exhibit C, it showed that he downloaded "SolarWinds Engineer's Toolset v9.2.zip" on August 15, 2012.

14.     I used this information to argue that defendant is not likely to be the prevailing party and that he was not being truthful.

15.

16.

17.

18.

19.

2

20.

21.

22.

23.

24.

25.

26.

27.

28.

**FURTHER DECLARANT SAYETH NAUGHT.**

3

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746,** I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of June, 2013.

**PAUL NICOLETTI**

By:

4

## DECLARATION OF CHRIS FIORE

**I, CHRIS FIORE, DO HEREBY DECLARE:**

1. I am over the age of eighteen (18) and otherwise competent to make this declaration. The facts stated in this declaration are based upon my personal knowledge.

2. I am counsel to Malibu Media in Pennsylvania and have personally acted as lead counsel for dozens of Malibu Media's copyright infringement lawsuits.

3. I have never considered using the Cross Reference ("Exhibit C") to improperly embarrass a defendant or force him to settle.

4. In my conversations with Malibu Media and other counsel, we never considered using Exhibit C to improperly embarrass a defendant.

5. Malibu Media's policy is to not contact the defendant sued in an individual suit for purposes of settlement prior to serving them with the Complaint. I have adhered to that policy.

6. I have been advised to always grant a defendant's request in an individual suit to proceed anonymously and have done so on numerous occasions.

7. I have found Exhibit C to be a very useful tool in my cases. Although I have used it many times, the most recent occasion was in the "Bellwether trial" where I, along with Malibu Media's counsel M. Keith Lipscomb, tried the first ever BitTorrent copyright infringement case on behalf of Malibu Media.

8. In that case, the Honorable Judge Baylson selected defendants that filed motions to quash the subpoena to proceed against to trial.

1

9.     One of the defendants had included with his motion a sworn declaration stating that before receiving notice of the lawsuit he had an unprotected wireless password.

10.     Upon receiving notice of the lawsuit, he secured his wireless. He promised the infringement would stop.

11.     At this time I observed that the infringement did stop for Malibu Media.

12.     When Judge Baylson ordered us to go to trial I reviewed the Cross Reference for this defendant.

13.     The Cross Reference demonstrated that while the BitTorrent user on his IP address stopped infringing Malibu Media's movies, that person continued to third parties copyrighted content.

14.     I was able to use this information to inform defendant that the infringement occurred within his household.

15.     Based on the information on the Cross Reference, defendant was able to identify which family member was responsible for committing the infringement.


**FURTHER DECLARANT SAYETH NAUGHT.**

2

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746**, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of June, 2013.

_____
CHRISTOPHER P.  FIORE

3

## DECLARATION OF JASON KOTZKER

**I, JASON KOTZKER, DO HEREBY DECLARE:**

1.      I am over the age of eighteen (18) and otherwise competent to make this declaration.  The facts stated in this declaration are based upon my personal knowledge.

2.      I am counsel to Malibu Media in Colorado and New York and have personally acted as lead counsel for over a hundred of Malibu Media's copyright infringement lawsuits.

3.      I have never considered using the Cross Reference ("Exhibit C") to improperly embarrass a defendant or force him to settle.

4.      In my conversations with Malibu Media and other counsel, we never considered using Exhibit C to improperly embarrass a defendant.

5.      Malibu Media's policy is to not contact the defendant sued in an individual suit prior to serving them with the Complaint.  I have adhered to that policy.

6.      I have been advised to always grant a defendant's request in an individual suit to proceed anonymously and have done so on numerous occasions.

7.      I have found Exhibit C to be a very useful tool in my cases.  Although I have used it many times, a recent occasion where it was useful is as follows:

8.

1

**FURTHER DECLARANT SAYETH NAUGHT.**

## DECLARATION

**PURSUANT TO 28 U.S.C. § 1746,** I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of June, 2013.

**JASON KOTZKER**

By: _____

2