# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

|  |  |
|---|---|
| MALIBU MEDIA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Case No. 2:13-cv-536-RTR |
| v. | ) |
| | ) |
| JOHN DOE subscriber assigned IP address | ) |
| 184.58.186.212, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| MALIBU MEDIA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Case No. 2:13-cv-544-RTR |
| v. | ) |
| | ) |
| JOHN DOE subscriber assigned IP address | ) |
| 97.83.171.176, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| MALIBU MEDIA, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Case No. 2:13-cv-779-RTR |
| v. | ) |
| | ) |
| JOHN DOE subscriber assigned IP address | ) |
| 174.103.170.157, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## BRIEF *AMICUS CURIAE* OF THE ELECTRONIC FRONTIER FOUNDATION IN SUPPORT OF SANCTIONS

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     RULE 11 SANCTIONS ARE APPROPRIATE HERE ....................................................3

        A.      Rule 11 Forbids Filing Material With No Purpose Except to Humiliate,
                Embarrass, or Harass ............................................................................................3

        B.      Rule 11 Applies to Every Paper, and Portions Thereof, Submitted to a Court .......4

        C.      Rule 11, Even If Raised *Sua Sponte*, Uses an Objective Test ................................5

III.    MALIBU HAS NO LEGITIMATE REASON TO INCLUDE UNRELATED,
        HUMILIATING MOVIE TITLES WITH ITS COMPLAINT. ..........................................7

        A.      Lewd Titles Are Not Necessary To State a Copyright Infringement Claim ...........7

        B.      The Lewd Titles Are Not Relevant to Defendant's Identity or Any Other
                Element of Malibu's Claims, and Are Unduly Prejudicial.....................................9

IV.     MALIBU'S ARGUMENTS AND CONDUCT SUGGEST THE TRUE PURPOSE OF
        INCLUDING THE LASCIVIOUS TITLES. ................................................................13

V.      MALIBU'S ALLEGED CORRECTIVE ACTIONS DO NOT OBVIATE RULE 11
        SANCTIONS .......................................................................................................15

VI.     CONCLUSION: THE COURT CAN JUSTIFIABLY CONCLUDE MALIBU
        INCLUDES EXHIBIT C TO HARASS AND COERCE SETTLEMENT .....................16

i

# TABLE OF AUTHORITIES

## Federal Cases

*Aspacher v. Rosenthal Collins Group*,
    No. 00-cv-7520, 2001 WL 930785 (N.D. Ill. Aug. 14, 2001)............................5

*Brown v. Federation of State Medical Boards*,
    830 F.2d 1429 (7th Cir. 1987) ..................................................................6

*Burda v. M. Ecker Co.*,
    2 F.3d 769 (7th Cir. 1993) .................................................................3, 5

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .............................................................................9

*Dominguez v. Hendley*,
    545 F.3d 585 (7th Cir. 2008) ..................................................................7

*Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 8*,
    802 F.2d 247 (7th Cir. 1986) ..................................................................5

*Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*,
    499 U.S. 340 (1991) .........................................................................7, 11

*Ginter v. Northwestern Mut. Life Ins. Co.*,
    576 F. Supp. 627 (E.D. Ky. 1984)..........................................................10

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*,
    801 F.2d 1531 (9th Cir. 1986) .............................................................3, 5

*Harlyn Sales Corp. Profit Sharing Plan v. Kember Fin. Serv's, Inc.*,
    9 F.3d 1263 (7th Cir. 1993) ....................................................................7

*Hrubec v. Nat'l R.R. Passenger Corp.*,
    829 F. Supp. 1502 (N.D. Ill. 1993)...........................................................5

*Hudson v. Moore Bus. Forms, Inc.*,
    836 F.2d 1156 (9th Cir. 1987) .................................................................5

*In re BitTorrent Adult Film Copyright Infringement Cases*, Nos. 11-3995 (DRH) (GRB),
    12-1147 (JS) (GRB), 12-1150 (LDW) (GRB), 12-1154 (ADS) (GRB), 2012 WL
    1570765, (E.D.N.Y. May 1, 2012) ..........................................................13

*Ingenuity 13, LLC v. Doe*,
    No. 12-cv-8333-ODW (C.D. Cal. issued Feb. 7, 2013) ..................................8

Case 2:13-cv-00544-RTR   Filed 12/13/13   Page 3 of 23   Document 25

*Jenkins v. Methodist Hosps. of Dallas, Inc.,*
  478 F.3d 255 (5th Cir. 2007) .........................................................................6

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*,
  No. 10-C-1118, 2011 WL 2491427 (E.D. Wis. June 22, 2011) .........................................5

*Malibu Media LLC v. Doe*,
  No. 13-cv-00891 (W.D. Mich. filed Aug. 19, 2013) .......................................................16

*Malibu Media LLC v. Doe*,
  No. 13-cv-00911 (N.D. Ill. filed Feb. 5, 2013).............................................................16

*Malibu Media LLC v. Doe*,
  No. 13-cv-02710 (D. Md. filed Sept 15, 2013) .............................................................16

*Malibu Media LLC v. Doe*,
  No. 13-cv-04663 (D.N.J. filed Aug. 2, 2013).................................................................16

*Malibu Media LLC v. Doe*,
  Nos. 13-cv-205-WMC, *et seq.*, 2013 WL 4821911 (W.D. Wis. Sept. 10, 2013)............1, 2

*Malibu Media LLC v. Does 1-23*,
  No. 12-CV-7579 (N.D. Ill. June 25, 2013) ...................................................................10

*Malibu Media, LLC v. John Does 1-10*,
  No. 2:12–cv–3623 ODW (PJWx), 2012 WL 5382304 (C.D. Cal. Jun. 27, 2012) ....2, 4, 13

*Malibu Media, LLC v. John Does 1-13*,
  No. 2:12–cv–01513 JAM DAD, 2012 WL 4956167 (E.D. Cal. Oct. 15, 2012) ................2

*Malibu Media LLC v. Tashiro*,
  No. 1:13-cv-205-WTL-MJD, 2013 WL 4763498 (S.D. Ind. Sept. 4, 2013) .....................8

*Malibu Media, LLC v. Doe*,
  No. 3:12-cv-575-J-34TEM, 2013 WL 525352 (M.D. Fla. Feb. 13, 2013).......................14

*Malibu Media, LLC v. Does 1-23*,
  878 F. Supp. 2d 628 (E.D. Va. 2012) ..........................................................................14

*Malibu Media, LLC v. Does 1-5*,
  No. 12-cv-2950 (JPO), 2012 WL 2001968 (S.D.N.Y. June 01, 2012) ........................4, 11

*Malibu Media, LLC v. Reynolds*,
  No. 12-cv-6672, 2013 WL 870618 (N.D. Ill. Mar. 7, 2013)........................................1, 14

iii

*Marlin v. Moody Nat'l Bank N A,*
   533 F.3d 374 (5th Cir. 2008) ...................................................................15

*Mars Steel Corp. v. Cont'l Bank N.A.,*
   880 F.2d 928 (7th Cir. 1989) ......................................................................6

*Mathis v. Phillips Chevrolet, Inc.,*
   269 F.3d 771 (7th Cir. 2001) ......................................................................9

*Melrose v. Shearson/Am. Express, Inc.,*
   898 F.2d 1209 (7th Cir. 1990) ....................................................................5

*Patrick Collins, Inc. v. Doe 1,*
   288 F.R.D. 233 (E.D.N.Y. 2012) ...............................................................13

*Pope v. Federal Exp. Corp.,*
   49 F.3d 1327 (8th Cir. 1995) ....................................................................16

*Reed v. Lincare, Inc.,*
   No. 11-C-221, 2012 WL 5906864 (E.D. Wis. Nov. 21, 2012) ..........................5

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.,*
   907 F. Supp. 1361 (N.D. Cal. 1995)...........................................................11

*Retired Chicago Police Ass'n v. Firemen's Annuity & Benefit Fund,*
   145 F.3d 929 (7th Cir. 1998) ......................................................................5

*Szabo Food Serv., Inc. v. Canteen Corp.,*
   823 F.2d 1073 (7th Cir. 1987) ..........................................................4, 6, 15

*TCYK, LLC v. Does 1-28,*
   No. 13-cv-3839-RAG, 2013 WL 3465186 (N.D. Ill. June 24, 2013).................4

*Thompson v. Duke,*
   940 F.2d 192 (7th Cir. 1991) ......................................................................5

*Thorton v. Wahl,*
   787 F.2d 1151 (7th Cir. 1986) ....................................................................5

*U.S. Bank Nat'l Ass'n, N.D. v. Sullivan-Moore,*
   406 F.3d 465 (7th Cir. 2005) ......................................................................6

*United States v. Chaimson,*
   760 F.2d 798 (7th Cir. 1985) ....................................................................10

*United States v. Loughry*,
  660 F.3d 965 (7th Cir. 2011) ............................................................................... 12

*Vollmer v. Publrs. Clearing House*,
  248 F.3d 698 (7th Cir. 2001) ............................................................................... 15

*Vollmer v. Selden*,
  350 F.3d 656 (7th Cir. 2003) ................................................................................. 3

*Voltage Pictures, LLC v. Does 1-198*,
  No. 6:13-CV-290-AA, 2013 WL 1900597 (D. Or. May 4, 2013) ........................... 4

*Whitehead v. FoodMax of Miss.*,
  332 F.3d 796 (5th Cir. 2003) ................................................................................. 3

*Young v. City of Providence*,
  404 F.3d 33 (1st Cir. 2005) ................................................................................... 6

*Zembezia Film Ltd v. Does 1-66*,
  No. C13-0308 MJP-RSL, 2013 WL 2325621 (W.D. Wash. May 9, 2013) ............. 4

## Federal Rules

Fed. R. Civ. P. 11 ........................................................................................... *passim*

Fed. R. Civ. P. 12 ............................................................................................ 8, 15

Fed. R. Evid. 404 ............................................................................................. 2, 10

v

## I.    INTRODUCTION

In this action, as in many others, Malibu Media LLC ("Malibu") attached to its complaint a list of files that it says the defendant downloaded illegally. Many of the files appear to be pornographic films with very lewd and embarrassing titles. As the Court noted, Malibu makes no copyright infringement claim, indeed no claim at all, concerning these hundreds of files. Decision and Order, Case 2:13-cv-00536-RTR, *et seq.*, Sept. 17, 2013 (ECF No. 18). Accordingly, this Court ordered Malibu to show cause "why attaching Exhibit C to the complaints in the above captioned cases does not violate Rule 11(b)." *Id.*

This Court was persuaded by the reasoning of Judge Conley in the Western District of Wisconsin, who issued sanctions against Malibu's counsel because of its "regular practice of attaching an apparently unrelated and embarrassing 'Exhibit C'" to its complaints in order to "harass and intimidate defendants into early settlements by use of the salacious nature of others' materials, rather than [by] the merit of [Malibu's] own copyright claims." *Malibu Media LLC v. Doe*, Nos. 13-cv-205-WMC, *et seq.*, 2013 WL 4821911, at *1 (W.D. Wis. Sept. 10, 2013) ("Sanctions Order").

*Amicus curiae* Electronic Frontier Foundation ("EFF") respectfully submits that Malibu and its counsel should be sanctioned here just as Malibu's counsel was sanctioned by Judge Conley: the salacious but irrelevant titles on Malibu's "Exhibit C" serve no legitimate purpose in a complaint. Their only purpose is to "persuade many initially anonymous defendants to reach early settlements out of fear of being 'outed' should the lawsuit proceed." Sanctions Order 2 (citing *Malibu Media, LLC v. Reynolds*, No. 12-cv-6672, 2013 WL 870618, at *6-8 (N.D. Ill. Mar. 7, 2013) (reviewing cases on this point)). Filing papers for harassment and embarrassment is forbidden by Fed. R. Civ. P. 11(b)(2).

As explained in detail below, Malibu's response makes three critical legal errors. First, it incorrectly asserts that its purported subjective beliefs are sufficient. Judge Conley dismissed this very argument: "sanctions may be warranted where an objectively reasonable attorney should know that: (1) there is no real need to take a given litigation action; *and* (2) the action would

1

substantially harass or embarrass the opposing party." Sanctions Order 8. If subjective intent were the only standard, it would only encourage attorneys to cross the line and then baldly assert good faith when challenged, relying on the difficulties of proving intent.

Second, Malibu asserts that the proffer of evidence in Exhibit C is a necessary and proper part of a complaint. Yet, despite its length, Malibu's response to the OSC gives no valid reason for filing "Exhibit C" on the public docket *with its complaint*. Judge Conley found this excuse was "specious" because the complaints in Malibu's cases "are easily specific enough to survive a motion to dismiss." Sanctions Order 5.

Third, Malibu errs when it asserts that Exhibit C could be properly introduced as evidence under the Federal Rules of Evidence. To the contrary, "the rules of evidence . . . almost certainly would exclude on prejudice grounds the admissibility of any of these outrageous titles, [despite] whatever marginal, probative value they may arguably have." *Id.* These titles are forbidden as "propensity" evidence, designed to paint a picture of the defendant as a habitual user of hardcore and deviant pornography. Fed. R. Evid. 404. Malibu's response admits this improper purpose. Plaintiff's Resp. to the Ct.'s Order to Show Cause, 40-41 (ECF No. 23) ("Malibu Resp.").

Malibu's litigation tactics also show that the purpose of including the salacious titles is solely to harass. Sanctions Order 3 (recounting that an OSC was issued because Exhibit C "serves no pleading purpose and appears calculated principally to harass defendants in violation of Fed. R. Civ. P. 11(b)"). Numerous courts have expressed concern over the potential for unjust, coercive settlements in Malibu's cases, with one describing them as "essentially an extortion scheme." *Malibu Media, LLC v. John Does 1-10*, No. 2:12–cv–3623 ODW (PJWx), 2012 WL 5382304, at *4 (C.D. Cal. June 27, 2012); *accord* Sanctions Order 9 (holding that these cases "already give off an air of extortion"); *Malibu Media, LLC v. John Does 1-13*, No. 2:12–cv–01513 JAM DAD, 2012 WL 4956167, at *2 n.2 (E.D. Cal. Oct. 15, 2012). Malibu's response to the OSC abdicates any responsibility for removing unnecessary and unfairly prejudicial material from its complaint – and relies on the courts to do so in every case it files. Malibu's response and

other conduct strongly suggest that it pursues and harasses the person whose name is on the Internet subscription that Malibu identifies, regardless of that person's liability – aided of course by Exhibit C's threat of public humiliation.

While a copyright holder has the right to enforce its copyrights, including through a campaign of lawsuits against members of the public, "[c]ounsel enforcing these rights . . . must already be aware that these cases are fraught with circumstances that could embarrass the putative defendant . . . and strongly influence [the defendant] to settle even a meritless suit just to make the case go away . . . ." Sanctions Order 9. Because Malibu's stated reasons for including the salacious titles with its complaints – or even proffering them as evidence at a later date – ring hollow, and because Malibu's own response and other conduct show a clear purpose to use them to coerce nuisance value settlements, Malibu has violated Rule 11. Moreover, this is not the first time Malibu has violated this Rule.

## II.    RULE 11 SANCTIONS ARE APPROPRIATE HERE

### A.    Rule 11 Forbids Filing Material With No Purpose Except to Humiliate, Embarrass, or Harass

"Parties [or] their attorneys violate Rule 11 when they bring legal action for any improper purpose, such as to harass or needlessly increase the cost of litigation." *Burda v. M. Ecker Co.*, 2 F.3d 769, 773 (7th Cir. 1993); *see also Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1537 (9th Cir. 1986) (Rule 11 was intended to curb "misusing judicial procedures as a weapon for personal or economic harassment"); *see also Vollmer v. Selden*, 350 F.3d 656, 659 (7th Cir. 2003) (citations omitted) ("Rule 11 provides that, if an attorney presents a motion to a court for 'any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation,' monetary sanctions may be imposed."). Filing a document to embarrass a party is also sanctionable under Rule 11(b). *Whitehead v. FoodMax of Miss.*, 332 F.3d 796 (5th Cir. 2003) (finding "no meaningful distinction" between a purpose to harass and a purpose to embarrass). Filing a document solely for the "purpose of getting paid to go away" is also sanctionable. *Vollmer,* 350 F.3d at 660.

Here, "[n]othing is gained by filing [Exhibit C] publicly in unredacted form, except to harass and embarrass defendants into early settlements." Sanctions Order 5. Courts have recognized the "risk of receiving coercive phone calls threatening public filings that link them to alleged illegal copying and distribution of pornographic films, if a settlement fee is not forthcoming." *Malibu Media, LLC v. Does 1-5*, No. 12-cv-2950 (JPO), 2012 WL 2001968, at *2 (S.D.N.Y. June 1, 2012). "The risk of a shake-down is compounded when the claims involve allegations that a defendant downloaded and distributed sexually explicit material." *Id*. at *1. "[T]he potential for abuse is very high. The infringed work is a pornographic film. To save himself from embarrassment, even if he is not the infringer, the subscriber will very likely pay the settlement price." *Malibu Media LLC*, 2012 WL 5382304, at *2; *see also* Sanctions Order 9 ("[E]xplicit references to . . . outrageous or potentially embarrassing materials copyrighted by a non-client" can be leveraged to "force earlier, larger settlements . . . .").

Sanctioning Malibu here does not entail holding Malibu "to a different standard than other federal court litigants", Malibu Resp. 34, on the basis of Malibu's being an adult film distributor. The "potential for abuse" exists whenever "the judicial authority of the United States may be used to wrest improvident settlements from pro se litigants under threat of huge statutory penalties." *Zembezia Film Ltd v. Does 1-66*, No. C13-0308 MJP-RSL, 2013 WL 2325621, at *1 (W.D. Wash. May 9, 2013); *see also Voltage Pictures, LLC v. Does 1-198*, No. 6:13-CV-290-AA, 2013 WL 1900597, at *1 (D. Or. May 4, 2013); *TCYK, LLC v. Does 1-28*, No. 13-cv-3839-RAG, 2013 WL 3465186, at *4 (N.D. Ill. June 24, 2013) (ordering plaintiff not to disclose defendants' identities publicly, even though the "sensitive and highly personal nature" of pornography accusations were not a factor in the case). Malibu's *litigation conduct*, not its business, provides ample grounds for sanctions here.

**B.    Rule 11 Applies to Every Paper, and Portions Thereof, Submitted to a Court**

Rule 11 applies to every "paper" presented to a court, "whether by signing, filing, submitting, or later advocating it." Fed. R. Civ. P. 11(b); *see also Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1077 (7th Cir. 1987) ("Rule 11 is designed to discourage

4

unnecessary complaints and other filings."). Rule 11 does *not* require that an entire complaint lack legitimate purpose for sanctions; that *part* of a complaint violates Rule 11 is sufficient. *Retired Chicago Police Ass'n v. Firemen's Annuity & Benefit Fund*, 145 F.3d 929, 935-36 (7th Cir. 1998) ("'Rule 11 may be applied to a single aspect of a document so that the sufficiency of some portions of a signed paper will not immunize it in its entirety.'") (citation omitted); *Melrose v. Shearson/Am. Express, Inc.,* 898 F.2d 1209, 1215 (7th Cir. 1990) ("A litigant cannot expect to avoid all sanctions under Rule 11 merely because the pleading or motion under scrutiny was not *entirely* frivolous."); *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1163 (9th Cir. 1987) (holding frivolous damages claim was sanctionable even though merits claim was colorable).

### C.    Rule 11, Even If Raised *Sua Sponte*, Uses an Objective Test

The test for a Rule 11(b) violation is primarily objective: whether the conduct at issue was reasonable under the circumstances. *Dreis & Krump Mfg. Co. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 8*, 802 F.2d 247, 255 (7th Cir. 1986); *Reed v. Lincare, Inc.*, No. 11-C-221, 2012 WL 5906864, at *9 (E.D. Wis. Nov. 21, 2012) ("The test of Rule 11 is objective.") (citing *Thorton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986)); *Kimberly-Clark Worldwide, Inc. v. First Quality Baby Products, LLC*, No. 10-C-1118, 2011 WL 2491427, at *1 (E.D. Wis. June 22, 2011) ("The Seventh Circuit employs a standard of 'objective reasonableness' by considering whether 'a reasonable attorney would have or should have known' that his conduct violated Rule 11.") (citing *Thompson v. Duke*, 940 F.2d 192, 195 (7th Cir. 1991)); *Aspacher v. Rosenthal Collins Group*, No. 00-cv-7520, 2001 WL 930785, at *7 (N.D. Ill. Aug. 14, 2001) ("Rule 11 does not require the Court to find that the party or his attorney acted in objective or subjective bad faith; rather, the court only needs to undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless.") (internal quotation marks omitted) (citing *Burda*, 2 F.3d at 774); *Hrubec v. Nat'l R.R. Passenger Corp.*, 829 F. Supp. 1502, 1507 (N.D. Ill. 1993); *see also Golden Eagle*, 801 F.2d at 1536 (Rule 11's "objective standard" was intended to be "more stringent than the original

5

good faith formula"). The filer's subjective intent is relevant as a secondary matter, allowing sanctions for improper subjective purposes, even if the party can concoct an objective basis. *Szabo*, 823 F.2d at 1083 ("[A]n objectively sufficient basis for its claim . . . is not enough. . . . Rule 11 has a subjective component as well.").

Malibu argues that a plaintiff's subjective good faith shields it from Rule 11 liability. Malibu Resp. 27-28. This is a misreading of *Szabo* and *Brown v. Federation of State Medical Boards*, 830 F.2d 1429 (7th Cir. 1987). In *Szabo*, the Seventh Circuit held that if the plaintiff had "an objectively sufficient basis" for its complaint, the district court should still consider the plaintiff's subjective intent as a potential ground for Rule 11 sanctions. 823 F.2d at 1083. The Court did *not* hold, as Malibu misleadingly suggests, Malibu Resp. 27-28, that a party's self-serving declaration of subjective good faith excuses an objectively improper filing. Likewise, *Brown* held that the 1983 revision to Rule 11 was intended to *increase* the scope of conduct forbidden by the rule by focusing on objective reasonableness. 830 F.2d at 1435.[1]

Moreover, courts have held that standards for Rule 11 sanctions should be the same, regardless whether they are raised *sua sponte* or by parties. *Young v. City of Providence*, 404 F.3d 33, 39 (1st Cir. 2005) (different substantive requirements would be "at odds with the plain language of Rule 11"); *Jenkins v. Methodist Hosps. of Dallas, Inc.,* 478 F.3d 255, 265 (5th Cir. 2007) (there is no "basis for making a distinction based on who initiates the sanctions inquiry").

Accordingly, Malibu cannot excuse its actions simply by pleading that it had pure motives. *U.S. Bank Nat'l Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465, 470 (7th Cir. 2005) ("Rule 11 establishes an objective test, and as we have repeatedly observed, an 'empty head but a pure heart is no defense.'") (citation omitted); Sanctions Order 8 ("'[I]t is not enough that the attorneys' subjective belief and purpose are innocent; it is also necessary that such mental state

---

[1] *Brown*, moreover, is no longer good law. *See Mars Steel Corp*. *v*. *Cont'l Bank N.A*., 880 F.2d 928 (7th Cir. 1989).

be based upon reasonable inquiry [and] objectively analyzed . . . .'") (quoting *Harlyn Sales Corp. Profit Sharing Plan v. Kember Fin. Serv's, Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993)).

### III. MALIBU HAS NO LEGITIMATE REASON TO INCLUDE UNRELATED, HUMILIATING MOVIE TITLES WITH ITS COMPLAINT.

"Malibu Media's denials [of ill intent] do not pass the smell test, and any denial of improper motive by its counsel does not pass the laugh test." Sanctions Order 8. All of Malibu's stated reasons for filing embarrassing but irrelevant movie titles with its complaints crumble under scrutiny.

#### A. Lewd Titles Are Not Necessary To State a Copyright Infringement Claim

No law, rule, practice, or legitimate strategy compels Malibu to include highly explicit movie titles with its complaints without making any claim for infringement of those titles. As Judge Conley recognized, all of Malibu's "proffered reasons for submitting" Exhibit C do not "survive scrutiny." Sanctions Order 4. "The purpose of a complaint is to put the defendant on notice of the claim that is being asserted against him, her, or it . . . ." *Dominguez v. Hendley*, 545 F.3d 585, 590 (7th Cir. 2008) (noting that material not in a pleading may still be used at trial). Copyright infringement has only two elements: ownership of a valid copyright and infringement by the defendant of one or more exclusive rights of the copyright holder. *Feist Publications, Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361 (1991). Accordingly, including "a plethora of information about the defendant beyond their merely having downloaded Malibu Media's movies," Malibu Resp. 19, does not make either element of the claim more plausible.

Exhibit C alleges, in effect, that someone using the defendant's Internet connection downloaded other files in which Malibu does not hold copyright. That allegation, taken as true, will not help Malibu because its complaint is already "easily specific enough to survive a motion to dismiss on plausibility grounds without the addition of Exhibit C." Sanctions Order 5. Likewise, even if Malibu proves the defendant downloaded every work on Exhibit C, but fails to prove copying of its own works, its lawsuit will still fail.

Rules 11 and 12(b)(6) do not require Malibu to include the salacious titles. Sanctions Order 5-6 (holding purported Rule 12(b)(6) justification as "specious" and Rule 11 justification as "[e]qually disingenuous"). In *Ingenuity 13, LLC v. Doe*, the court ordered the plaintiff to show cause why it should not be sanctioned for serving a complaint on an Internet user based only on "an [Internet Protocol] address, the name of the Bittorrent client used, the alleged time of download," and a "hunch" that the infringer is a pubescent male. No. 12-cv-8333-ODW (C.D. Cal. issued Feb. 7, 2013) 5-6 (ECF No. 48) ("Ingenuity OSC"). The sanctions were based on the plaintiff's counsel's "blatant lie" to the court about the thoroughness of their pre-suit investigation, not on the quantum of allegations in the complaint. Order Issuing Sanctions 6 (ECF No. 130), *id.* ("[T]he Court is not as troubled by their lack of reasonable investigation as by their cover-up."). Although Judge Wright suggested in dicta that "Plaintiff can compile its tracking data to determine whether other copyrighted videos were downloaded under the same IP address," Ingenuity OSC 6-7, nothing in his opinion remotely suggests that naming all such copyrighted videos in its complaint, including those likely to embarrass and to coerce an unjust settlement, is "necessary for a plaintiff to comply with" Rule 11. Malibu Resp. 19.

Malibu's remaining reasons for including the lewd titles in Exhibit C fail to distinguish between a pleading and a proffer of evidence. Malibu asserts that "the electronic evidence associated with defendants' connections to all or some of the content on Exhibit C paints a picture of a person," and that "because Plaintiff attached Exhibit C to the Complaint, the defendant will be less likely to deny the infringement because he knows Malibu Media can associate him with those things." Malibu Resp. 15. But even if "some of the content on Exhibit C" was actually probative of a defendant's identity and liability – and as discussed below, most of it is not – Malibu "could achieve these same results by pleading that it has a much more comprehensive list of materials and, if a defendant refuses to acquiesce or assist, providing the actual list to him or her directly and confidentially." Sanctions Order 5 (citing *Malibu Media LLC v. Tashiro*, No. 1:13-cv-205-WTL-MJD, 2013 WL 4763498, at *7 (S.D. Ind. Sept. 4, 2013).

If Malibu is put to its proof, it *cannot* rely on exhibits to its complaint, but must introduce the information on Exhibit C as part of the sworn testimony of an expert witness or other admissible evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (a motion for summary judgment "requires the nonmoving party to go beyond the pleadings"). Including Exhibit C *in the complaints* cannot "assist Plaintiff in proving that a defendant is a BitTorrent user," "that the infringer resides in the subscriber's house," "that a defendant had knowledge of the infringement," or any other fact, because a complaint is not evidence. Malibu Resp. 17-18.

Malibu also asserts that "Exhibit C is attached to complaints for the purpose of allowing an innocent subscriber to review it and identify the infringer." Malibu Resp. 16. Even assuming that an innocent subscriber would be so familiar with other people's tastes in adult entertainment to identify who downloaded what, Malibu fails to explain why a confidential letter to the subscriber would not accomplish the same purpose. Sanctions Order 5-6.

**B.    The Lewd Titles Are Not Relevant to Defendant's Identity or Any Other Element of Malibu's Claims, and Are Unduly Prejudicial.**

As Exhibit C is not evidence, its admissibility under the Federal Rules of Evidence is not before the Court. Nonetheless, the salacious titles in Exhibit C are likely *not* admissible as evidence, and Malibu will likely *not* be able to use those titles to prove a defendant's identity or any other of Malibu's stated purposes. Sanctions Order 5. The inadmissibility of those titles is further proof that Malibu has no legitimate reason for including them with its complaints.

The Seventh Circuit's test for admissibility of prior acts has four parts:

> (1) the evidence must be directed toward establishing something at issue other than a party's propensity to commit the act charged; (2) the other act must be similar enough and close enough in time to be relevant to the matter at issue; (3) the evidence must be such that the jury could find that the act occurred and the party in question committed it; and (4) the prejudicial effect of the evidence must not substantially outweigh its probative value.

*Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 775-76 (7th Cir. 2001) (citation omitted). Throughout its response, Malibu attempts to confuse the issue by discussing *other* material it

includes or hypothetically might include in Exhibit C. But the focus of the Court's OSC is the pornographic titles, and those titles fail the Seventh Circuit's test.

The lewd titles are directed at showing a defendant's propensity to infringe copyright, a purpose forbidden by the Rules of Evidence. "According to Rule 404(b), evidence of other acts cannot be introduced to establish the defendant's bad character or to show his propensity to commit the act in question simply because he committed a similar act in the past." *United States v. Chaimson*, 760 F.2d 798, 804 (7th Cir. 1985); *see also Ginter v. Northwestern Mut. Life Ins. Co.*, 576 F. Supp. 627, 630 (E.D. Ky. 1984) ("It seems beyond peradventure of doubt that the drafters of F.R. Evid. 404(a) explicitly intended that all character evidence, except where 'character is at issue' was to be excluded" in civil cases.). Yet Malibu admits the forbidden propensity purpose explicitly in its response: "Just as where a person who is obsessed with violence is more likely to commit murder, a person who uses BitTorrent every day to steal content from other intellectual property holders is more likely to steal Plaintiff's content through BitTorrent." Malibu Resp. 41.

In a hearing on a similar case in the Northern District of Illinois, Judge Durkin asked Malibu's counsel about this Court's OSC:

> THE COURT: Well, what's the point of naming basically porno movies as an attachment to a complaint other than to put undue pressure on a defendant?
>
> MS. SCHULZ: Your Honor, I can answer that. And we are responding to Judge Crocker's rule to show cause. The – in some cases the expanded discovery includes 25 pages of downloads which are not concerned – we're not looking for adult entertainment subjects in there. And, actually, those are of little relevance to us. What we're looking at is the propensity to download.

Transcript of Proceedings Before the Honorable Thomas M. Durkin 9-10, *Malibu Media LLC v. Does 1-23*, No. 12-CV-7579 (N.D. Ill. June 25, 2013).

Regarding the third factor, the marginal probative value of the pornographic titles on Exhibit C is slight, at best. Sanctions Order 5. An IP address identifies, at most, an Internet subscription that can be used by multiple people. "The fact that a copyrighted work was illegally

downloaded from a certain IP address does not necessarily mean that the owner of that IP address was the infringer." *Malibu Media, LLC*, 2012 WL 2001968, at *1.

Not everything that is or could be listed in Exhibit C is equally probative of a downloader's identity. It is easy to construct a convenient hypothetical, as Malibu does, whereby correlating a highly distinctive download such as "occupational software called SolarWinds," or having used a particular screen name in an online game, helps identify who was using an IP address.[2] Malibu Resp. 15, 20.

In contrast, the pornographic films listed on Exhibit C do no more to prove the downloader's identity than the Malibu film on which the claim of copyright infringement is based. The only inference Malibu claims to draw from these films (other than the defendant's "propensity to download") is that the downloader "is a heterosexual man," Malibu Resp. 15, an inference that could be drawn equally from downloading of Malibu's own film.[3] Moreover, if Malibu does have evidence of downloads that suggest distinctive traits or identifying characteristics, any additional probative value of the lewdly titled films shrinks to insignificance.

Malibu makes passing reference to a few other, hypothetical evidentiary purposes for Exhibit C: defendant's "knowledge of the infringement" and "intent." Malibu Resp. 18, 43. It does not explain why downloading an item from the Exhibit C list would show knowledge or intent about the separate copyrighted work. In any event, direct copyright infringement is a strict liability tort and neither knowledge nor intent is a required element; Malibu has no need to prove them. *Feist*, 499 U.S. at 361; *Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1370 (N.D. Cal. 1995).

---

[2] However, if there were multiple users of the subscriber's wireless Internet connection, the fact that one user used a particular screen name would say little about whether that user or another user downloaded the film at issue. Malibu's arguments are based on the false premise that identifying one actor on an IP address identifies all others. To the contrary, in a multi-user household, one person might use the computer to play World of Warcraft, while another checks the stock market, and a third visits ESPN's website.

[3] The "hunch" that a "pubescent male" must be the infringer of pornographic films is the very leap of logic that Judge Wright found insufficient to justify a complaint. Ingenuity OSC 5-6.

Under the fourth factor, a court evaluates whether the danger of unfair prejudice substantially outweighs the probative value of the salacious titles. Here, Judge Conley correctly held that any probative value of those titles is marginal at best. Sanctions Order 2, 5, 7. On the other hand, the "far more disturbing lewd, unusual and unredacted titles", *id.* at 3, can devastate a defendant's reputation, family, personal and professional relationships, and even his or her livelihood simply by association. That accusation is an obvious example of unfair prejudice, which far outweighs any minimal probative value those titles might hold. *See United States v. Loughry*, 660 F.3d 965, 974 (7th Cir. 2011) (holding that district judge abused discretion by admitting "hard-core" child pornography images that were not part of the crime charged; finding that such images "have a strong tendency to produce intense disgust" and "made [the defendant] appear more despicable to the jury" than the crime charged).

Here, prejudicial effect substantially outweighs probative value, especially given that the titles are minimally probative. Sanctions Order 5. Propensity is a classic form of prejudicial effect, and so is damage to reputation. Given the obvious danger of unfair prejudice, claiming that the titles might conceivably be used to show identity does not make them admissible, especially when alternative, less inflammatory information relating to, *e.g.*, fly-fishing and the White Sox, is available. Malibu Resp. 15.

Finally, Malibu suggests that because its complaints request permanent injunctions, using the salacious titles to prove "a likelihood of future conduct" becomes important enough to overcome the unfair prejudice those titles cause. Malibu Resp. 42. Not so. Including a request for injunctive relief in a complaint does not give the plaintiff a free pass to introduce propensity evidence and unfairly prejudicial material.

Exhibit C is not evidence. But should Malibu attempt to proffer the salacious but irrelevant titles in Exhibit C as evidence at summary judgment or trial, their obvious purpose as propensity evidence and their inflammatory and prejudicial nature would likely bar their use. This further shows that Malibu includes them with its complaints for an improper purpose.

## IV. MALIBU'S ARGUMENTS AND CONDUCT SUGGEST THE TRUE PURPOSE OF INCLUDING THE LASCIVIOUS TITLES.

Absent any legitimate reason for including irrelevant but embarrassing titles in an exhibit to Malibu's complaints, the true purpose Malibu's tactic becomes obvious: to coerce, "harass and intimidate defendants into early settlements by use of the salacious nature of others' materials, rather than [by] the merit of [Malibu's] own copyright claims." Sanctions Order 2.

Numerous courts have recognized the danger of coercive settlements created by BitTorrent infringement cases concerning pornographic films–including cases brought by Malibu. Magistrate Judge Brown of the Eastern District of New York described why these cases are different from other copyright infringement actions:

> It would be unrealistic to ignore the nature of plaintiffs' allegations–to wit: the theft of pornographic films–which distinguish these cases from garden variety copyright actions. Concern with being publicly charged with downloading pornographic films is, understandably, a common theme among the moving defendants. As one woman noted in *K–Beech*, "having my name or identifying or personal information further associated with the work is embarrassing, damaging to my reputation in the community at large and in my religious community." Mtn. to Quash, ¶ 5, DE [7]. Many courts evaluating similar cases have shared this concern. *See, e.g., Pacific Century Int'l, Ltd. v. Does 1-37*, ---F.Supp.2d ----, 2012 WL 1072312, at *3 (N.D. Ill. Mar. 30, 2012) ("the subscribers, often embarrassed about the prospect of being named in a suit involving pornographic movies, settle"); *Digital Sin*, 2012 WL 263491, at *3 ("This concern, and its potential impact on social and economic relationships, could compel a defendant entirely innocent of the alleged conduct to enter an extortionate settlement") *SBO Pictures*, 2011 WL 6002620, at *3 (defendants "whether guilty of copyright infringement or not-would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement'"). This consideration is not present in infringement actions involving, for example, popular music downloads.

*In re BitTorrent Adult Film Copyright Infringement Cases*, Nos. 11-3995 (DRH) (GRB), 12-1147 (JS) (GRB), 12-1150 (LDW) (GRB), 12-1154 (ADS) (GRB), 2012 WL 1570765, at *10 (E.D.N.Y. May 1, 2012) (collecting cases), *report and recommendation adopted sub nom. Patrick Collins, Inc. v. Doe 1*, 288 F.R.D. 233, 236 (E.D.N.Y. 2012); *see also Malibu Media, LLC*, 2012 WL 5382304, at *2 ("[T]he potential for abuse is very high. The infringed work is a

pornographic film. To save himself from embarrassment, even if he is not the infringer, the subscriber will very likely pay the settlement price."); *Malibu Media, LLC v. Does 1-23*, 878 F. Supp. 2d 628, 632 (E.D. Va. 2012) (recognizing the danger of "coercing unjust settlements from innocent defendants") (internal quotation marks omitted); *Malibu Media, LLC v. Doe*, No. 3:12-cv-575-J-34TEM, 2013 WL 525352, at *4 (M.D. Fla. Feb. 13, 2013) (noting that "judges in this and other districts who have exercised their discretion to sever John Doe defendants . . . have generally done so for practical reasons, including . . . the likelihood that joinder will facilitate coercive settlements among the John Doe defendants") (citation omitted); *Malibu Media, LLC* , 2013 WL 870618, at *7 (noting that public accusations of pornography use "may be used to shame defendants into settlement agreements where they may otherwise have a meritorious defense").

Malibu has used, and continues to use, other tactics in conjunction with the Exhibit C filings to coerce settlements. Malibu files with its complaints an unsigned, non-binding but official-looking discovery request that it calls an "Exculpatory Evidence Request Form" ("Exhibit D"), along with the "Exhibit C" list. *See* Malibu Resp. 16. As with Exhibit C, Malibu gives no legitimate reason for filing an informal discovery request with a complaint. Its likely reason for doing so – rather than sending such a request to defendants confidentially – is to give these non-binding discovery requests the imprimatur of an official court document, leading a frightened and legally unsophisticated Internet subscriber to believe she faces some penalty for refusing to volunteer information to Malibu's counsel.[4]

Malibu claims that "[N]o phone calls or letters have ever been sent to doe defendants soliciting a settlement *in an individual suit* [i.e., in Malibu's more recently filed suits]." Malibu Resp. 26 (emphasis added). Of course, Malibu does contact all defendants and potential defendants at least once – to provide them with a copy of the complaint, accompanied by the salacious Exhibit C and the official-looking but unnecessary "Exculpatory Evidence" form. By

---

[4] The coercive "exculpatory evidence" form is an independent basis for Rule 11(b) sanctions.

sending these documents in lieu of other forms of communication with defendants, Malibu has simply replaced one form of improper coercion with another. The difference between its current and prior practice is the difference between brandishing a weapon and simply saying "That's a nice house you have. Shame if something were to happen to it."

Finally, Malibu's improper purpose for including the salacious titles with its complaints is evident from its disclaimer of any responsibility to avoid including "immaterial, impertinent, or scandalous matter" in its complaints. Malibu Resp. 47; Fed. R. Civ. P. 12(f). Malibu contends that because hypothetical third parties might "suggest[] that this or that file should have also been deleted," Malibu is justified in including unquestionably incendiary and irrelevant material with its complaints and tasking the courts with striking such material *sua sponte* in each case. Malibu Resp. 47. Given that Malibu is filing complaints at a rate of over 900 per year,[5] Malibu's proposed rule would put an incredible burden on the federal courts, and is inconsistent with the principle of judicial economy.

## V. MALIBU'S ALLEGED CORRECTIVE ACTIONS DO NOT OBVIATE RULE 11 SANCTIONS

As an initial matter, the Court's ability to seal a pleading after it is filed or strike material from pleadings does not alter a party's duties under Rule 11. After all, once Malibu's complaint is filed and the potential defendant is notified, the shakedown has already been accomplished. *See Szabo*, 823 F.2d at 1077 ("The violation of Rule 11 is complete when the paper is filed."). Accordingly, courts adhere to the "snapshot rule", whereby a "Rule 11 review focuses upon the instant when the picture is taken-when the signature is placed on the document." *Marlin v. Moody Nat'l Bank N A*, 533 F.3d 374, 380 (5th Cir. 2008) (citation omitted). As such, courts consider a party's "past conduct in fashioning Rule 11 sanctions" because the past conduct may indicate "a pattern of activity" or "whether the person has engaged in similar conduct in other litigation." *Vollmer v. Publrs. Clearing House*, 248 F.3d 698, 710 (7th Cir. 2001) (quoting *Pope*

---

[5] As shown by a federal court PACER search for Malibu Media, LLC as plaintiff for cases filed in the last 12 months.

*v. Federal Exp. Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995)). Here, though Malibu has offered to take some corrective action—moving to seal the salacious material (but not striking it from the docket)—Malibu cannot unring the Exhibit C bell. The damage has already been done. In examining Malibu's conduct at the time it filed the Complaint, Malibu has violated Rule 11.[6]

In summary, Malibu's tactics, the explanations it provides for those tactics, and the observations of many federal courts about similar tactics all point to the true purpose behind Exhibit C. And the true purpose is exactly why Judge Conley was correct to issue sanctions.

## VI.  CONCLUSION: THE COURT CAN JUSTIFIABLY CONCLUDE MALIBU INCLUDES EXHIBIT C TO HARASS AND COERCE SETTLEMENT

Judge Conley recognized that "[s]anctions are an extreme measure in any case." Sanctions Order 9. All of Malibu's stated reasons for including a list of irrelevant lewd titles with its complaints fail – there is simply no legitimate reason to attach such matters to a complaint for copyright infringement. Malibu's explanations, and its conduct of litigation, strongly suggest a purpose to harass, embarrass, and obtain quick cash settlements regardless of merit. While copyright owners have a right to enforce their copyrights, they must follow the same rules and observe the same standards of conduct as all other federal litigants. Malibu has transgressed those rules and standards, and its counsel was properly sanctioned by Judge Conley in a well-reasoned opinion that this Court properly found persuasive. Accordingly, Malibu and its counsel should be sanctioned under Federal Rule of Civil Procedure 11(b) in this court for the same reasons.

---

[6] Malibu has filed almost 200 cases since it was sanctioned on September 10, 2013. While it claims to have instructed its counsel nationwide to never file Exhibit C with a complaint again, Malibu Resp. 37, complaints filed after the Wisconsin sanctions order contained Exhibit C. *See e.g. Malibu Media LLC v. Doe*, No. 13-cv-02710 (D. Md. filed Sept. 15, 2013). Malibu also claims to have taken "corrective action" in certain jurisdictions,, Malibu Resp. 37, but omits to mention that it has not taken any action in other jurisdictions. *See e.g. Malibu Media LLC v. Doe*, No. 13-cv-00891 (W.D. Mich. filed Aug. 19, 2013). Nor has it taken action in all the cases in the claimed jurisdictions. *See, e.g,. Malibu Media LLC v. Doe*, No. 13-cv-04663 (D.N.J. filed Aug. 2, 2013); *Malibu Media LLC v. Doe*, No. 13-cv-00911 (N.D. Ill. filed Feb. 5, 2013).

Dated:        October 21, 2013            Respectfully submitted,

_____/s/ Hanni Fakhoury_____
Hanni Fakhoury
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Tel: (415) 436-9333
Fax: (415) 436-9993
hanni@eff.org

*Counsel for Amicus Curiae*
*Electronic Frontier Foundation*